Opinion delivered March 23, 1888.

---

No. 2583.

THE MAYOR, ALDERMEN AND INHABITANTS OF THE CITY OF HOUSTON *v.* LUTHER C. VOORHIES.

1. TAXATION—CITIES AND TOWNS.—The city of Houston has full power under section 6, article 11, of the State Constitution, to assess, levy and collect such taxes as may be sufficient to pay the interest and provide a sinking fund to satisfy any indebtedness lawfully incurred and existing at the time the Constitution in force was adopted.
2. CITY ORDINANCES — MARKET HOUSE BONDS.—The ordinance under which the market house bonds of the city of Houston were issued, did not contemplate that the city should pay rent for such portions of the market house as were constructed and used for offices by the municipal officers or for like municipal purposes.
3. LEVY—SAME.—The levy by the city of Houston of an ad valorem tax of one per cent, to pay interest and create a sinking fund to satisfy all its bonded indebtedness, was not a compliance with the contract made with the parties to whom market house bonds were issued. The city was under obligation to compel the collection of taxes levied to the extent that the same was practicable. The mere levy and assessment of taxes, and placing the tax roll in the tax collector's hands, was not a full compliance by the city with its duty to creditors, and the city can not shield itself from a peremptory writ of mandamus to compel it to pay

a judgment formerly rendered in favor of the holders of market house bonds, under the plea that a city official had failed to perform his duty, when it had the power to compel its performance.

4. SAME.—See opinion for facts under which it was held that a former judgment against the city, and in favor of a holder of market house bonds, which required it to pay to him a specific sum as his pro rata of funds then in the hands of the city officials, subject to the payment of his debt, did not deprive the holder of the bonds of further legal process which might be found necessary to enforce payment of the debt adjudged to be due.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*Hutcheson, Carrington & Sears,* for appellant: The court erred in its judgment herein specially in this, to wit: In finding, as it did in the judgment, that enough of the revenue arising from the one-fourth of one per cent ad valorem tax levied by the ordinance under which plaintiff's bonds were issued, and from the market house bond fund, had been collected by the defendant to pay plaintiff's said debt, and applied by defendant to other purposes than as contemplated by said ordinance, under which plaintiff's bonds were issued; because the proof nowhere showed a separate levy of one-fourth of one per cent, and the proof showed clearly that all moneys collected by the city of Houston from all sources, except what was necessary for its running expenses, had been faithfully and lawfully applied by it to indebtedness of the same class and kind and issued under the same ordinance as that under which plaintiff's bonds were issued, and that none of said funds had been diverted to any other purpose, or in any manner misapplied by defendant, and that the council had done all required of them, and that they should have been discharged. (Chandler v. Meckling, 22 Texas, 37; Houston & Texas Central Railway v. Schmidt, 61 Texas, 283.)

The evidence showed conclusively that no peremptory writ should issue against the respondent, for the council had done all they were required or able to do, and that the only person who could be mandamused was the assessor and collector, who was not a party before the court. (Ex parte Roland, 104 U. S., 604.)

The court erred in its judgment, especially in this: In awarding to plaintiff the peremptory writ of mandamus to the defendant requiring it to pay over to plaintiff the full amount of

his judgment, from the revenues of the market house, because plaintiff's said judgment constituted a very small part of the debt of the defendant on account of market house bonds and interest thereon, the proof showing that at the date of the judgment there was due for interest on said market house bonds to the amount of seventy-eight thousand dollars, which was entitled to be paid out of said fund, and plaintiff should only have been awarded a writ of peremptory mandamus, if at all, for such proportion of the market house revenues as his claim bore to the whole amount of indebtedness for interest on market house bonds. (United States v. Macon City, 99 United States, 582; 2 Wood's Rep., 528; 3 Wood's Rep., 541; Sibley v. City of Mobile, 3 Wood's Cir. Ct. Rep., 541.)

The court erred in awarding to plaintiff a peremptory writ of mandamus, directed to the defendant, requiring it to pay the full amount of the judgment out of the first moneys collected from the revenues of the market house, and out of the taxes levied for the years 1879 to 1884, both inclusive, for the purpose of paying the bonded indebtedness of the defendant corporation, and in not restricting him to a recovery of only such proportion of said fund as his debt bears to the whole indebtedness of the city of Houston on the same account, and payable out of the same funds, and in not sustaining defendant's plea of *res adjudicata*, because the proof showed that on a former trial between the plaintiff and the defendant in this cause, wherein the original judgment was rendered for plaintiff, of which the judgment in this cause is a revival, the same questions of law and fact were at issue between the parties, and the court adjudged plaintiff to be entitled to only a pro rata payment out of the funds of the city, and that said judgment and decree remain unreversed, and has not been appealed from. (Frankland v. Cassady, 62 Texas, 418; Bullock v. Ballew, 9 Texas, 498.)

*W. C. Oliver,* for appellee: Cited 1 Dillon on Municipal Corporations, section 41; McLane v. Paschal, 62 Texas, 102; Burrows on Public Securities, 547–549; 1 Perry on Trusts, page 248; Revised Statutes, articles 1262, 1265; Mayor v. Quincy, 113 United States, 332; and Lufkin v. Galveston, 63 Texas, 438.

STAYTON, CHIEF JUSTICE. This action was brought by the appellee to revive a judgment rendered in his favor against the

appellant by the district court for Harris county, on December 6, 1881, for nine thousand seven hundred and six dollars and sixty-four cents. That judgment was rendered on the coupons of bonds issued by the appellant to realize funds necessary to build a market house. The bonds were issued in pursuance of an ordinance passed May 11, 1871, which, among other things, provided as follows:

"Be it further ordained, that all the money and other revenues which may accrue to said city of Houston from and after the first day of January, 1872, in any manner, from the public market house, and market houses now established, or which may be hereafter established and constituted anywhere within the limits of said city, by renting, leasing or otherwise conducting same, or any right or privildge belonging or pertaining to same, by virtue of any existing laws or ordinances of said city, or by any law or ordinance that may be hereafter passed by said city for that purpose, be and the same is hereby appropriated, set apart and solemnly pledged as a special fund to pay the interest as it accrues on said bonds, and to create a sinking fund to pay the principal of said bonds, which fund, so raised by the reve nues aforesaid, shall be known as the 'market house bond fund,' which shall not be used for any other purpose whatever until the interest and principal of all said bonds are paid."

The ordinance then requires the depositing of this fund in bank to the credit of the market house bond fund, and reiterates that it shall not be applied to any other purpose whatever than the payment of the interest and principal of said bonds. The ordinance further provides:

"It shall be the imperative duty of the mayor and city council of said city to see that said public market and market houses are properly managed, and the revenues thereof promptly collected and faithfully applied to the purposes aforesaid."

Section third of said ordinance or resolution reads as follows:

"Be it further ordained, in addition to the provisions of the preceding section of this ordinance, for the purpose of paying the interest and creating a sinking fund for the payment of the principal and interest of said bonds; that a special annual tax of one-fourth of one per cent ad valorem is hereby assessed upon all property, both real and personal, within the corporate limits of said city, which said tax shall be collected annually, as other taxes of said city; and the proceeds of said special tax shall be kept separate by said city as a special fund, to be known

as the revenue fund. And if at any time the revenues which constitute the market house bond fund be insufficient to pay the interest and to provide the sinking fund to redeem the principal of said bonds, then and in that case the money constituting the reserve fund as provided in this section shall be applied by said city in paying the interest and creating a sinking fund for the payment of the principal of said bonds. Should said reserve fund be at any time more than sufficient to pay off and make good the market house bond fund, then the excess shall be credited to the general tax fund of the city."

The appellee seeks also a writ of mandamus to compel the appellant to pay the judgment, in this cause sought, out of any fund on hand raised under the ordinances referred to, or out of the first moneys so accruing, and if this can not be done that the appellant be compelled to collect the uncollected taxes alleged to be due the city from the year 1879 to the year 1884, inclusive, and therefrom to pay the judgment, interest and costs in full. The amount of this uncollected tax was shown to be one hundred and twelve thousand six hundred and eighty-six dollars, which was levied as a general tax of one per cent to meet the interest and create a sinking fund on all the united indebtedness of the appellant. The tax of one-fourth of one per cent, provided by the ordinance before set out, and by the contract under which the bonds held by appellee were issued, was never separately levied and kept as a distinct fund.

It was claimed and shown that one-half of the revenue arising from the market house was appropriated to other purposes than the payment of the interest on the market house bonds. It was also claimed and shown that no part of revenue derived from the market house other than that derived from the renting of the lower story was in any way applied or set apart to meet the interest on the market house bonds, although other parts of the house seem to have been used for purposes other than offices in which the municipal business was conducted. The judgment on which this action was founded was rendered in a case in which a mandamus was sought to compel the appellant to pay the debt then sued on, out of funds then on hand, and by the contract under which the market house bonds were issued subject to such claim, a judgment was rendered in that case from the sum due on the coupons sued on, and a writ of mandamus was issued commanding the appellant

to pay to the appellee the sum of one thousand six hundred dollars out of the fund so in hand, and this sum was paid and credited on the judgment.

The defense in this action is thus summarized by counsel for appellant: "The defendant admitted the judgment was recovered, but alleged that it was a very small portion of the debt past due and owing by the city; that the total amount of the city debt was some one million five hundred thousand dollars, all of which had been defaulted on, and that there was one hundred thousand dollars of past due interest on the coupons of the same series as plaintiff's, and two hundred and fifty thousand dollars of past due interest unpaid on the entire debt of the city; that the revenues of the city were wholly inadequate to pay the entire current or past due interest, and that they were, and always had been, willing to pay plaintiff his pro rata share, and that that was the measure of his right to recover and to mandamus them to pay. The defendant set out the complications of its various issues of debt, and that by various and conflicting decisions and mandamus proceedings all the funds in the hands of the city had been paid away to other creditors, exhausting the funds in their hands; that they had faithfully applied funds collected to the payment of their debts pro rata, except where the court's process came in and wrenched the funds from their hands; that they were then without any funds; that they had made all levies of taxes to the limit of the laws of the State, and they were diligently and vigorously endeavoring to collect same, and the rolls were in the hands of their collector, and they were in no default regarding same. That plaintiff was concluded from his claim of priority over other creditors of the city, or right to collect his entire debt, or anything in excess of his pro rata, by previous decision on that point in the rendition of the judgment sought to be revived of date December 6, 1881, in which he was held and adjudged to be entitled to be paid, and was to be paid only pro rata in the proportion that his debt bore to the entire outstanding debt of the city; and that whether this were the law, and a proper decree could not now be contested nor a different judgment rendered him, was res adjudicata. It pleaded that by legislative sanction it had issued what was known as a consolidated bond, and into which all its bonds were to be merged, and that it levied, in pursuance of said legislative sanction, one per cent to pay the interest on said consolidated bond, and one

per cent for current expenses, and that these levies were all the law allowed of being made, and that all of its creditors were entitled to share this fund pro rata, and that there was no fund out of which to pay plaintiff otherwise." The case was submitted to the court without jury, and the court revived the judgment and issued a peremptory writ of mandamus against the appellant.

So much of which as is important in the consideration of this case is as follows: "It appearing to the court that the judgment rendered herein was for interest on market house bonds of defendant, and it appearing to the court that the ordinances under which plaintiff's bonds in judgment issued is a part of defendant's contract with plaintiff, therefore no subsequent issuance of bonds or debts can interfere with plaintiff's rights under said contract, and that enough of the revenue arising from the one-quarter of one per cent levied by the ordinance under which said bonds were issued, and from the market house bond fund, has been collected by defendant to pay plaintiff's said debt, and by it applied to other purposes than as contemplated by said ordinances; therefore the court decrees a peremptory writ of mandamus against the defendant, ordering them to pay exclusively the debt of plaintiff out of the first moneys collected from market house revenues and from the one per cent bond tax levied for the years 1879 to 1884, both inclusive." The record shows that the sums received from the market house have not exceeded annually the sum of six thousand dollars, and that there are past due coupons on "market house" bonds aggregating the sum of seventy-six thousand eight hundred dollars. The record further shows that an ad valorem tax of one per cent has been levied and appropriated to the pro rata payment of all the bonded indebtedness of the city, and that of this tax only about one hundred and twelve thousand dollars remained uncollected; that the interest on the bonded debt of the city due and unpaid exceeded two hundred and fifty thousand dollars, for which no provision had been made other than the levy of a tax of one per cent, which is inadequate to meet the interest annually falling due. Besides this, it appears that a tax of one per cent on all property within the city is necessary to raise money to pay current expenses of the city.

The first assignment of error is: "The court erred in its judgment in holding priority for this debt; that no subsequent

issuance of bonds or other debts by defendant could interfere
or rank with plaintiff's rights under the ordinances of defend-
ant for the issuance of the bonds on which plaintiff's judgment
was based: Because the charter under which said ordinances
were framed authorized the creation of other debts and the
issuance of other bonds of the defendant, which were entitled
to equal rank with plaintiff's debt, and the plaintiff took said
bonds subject to such right of the city of Houston to create
other debts, and the subsequent creation of other debts and
the issuance of other bonds was no violation of plaintiff's con-
tract, but said contract was made with reference to such right."

In the case of Voorhies v. The Mayor, Aldermen and Inhabi-
tants of the City of Houston, this day decided, it was held that
the appellant has full power under section 6, article 11, of the
Constitution, now in force, to levy, assess and collect such
taxes as may be sufficient to pay the interest and provide a
sinking fund to satisfy any indebtedness lawfully incurred and
existing at the time the Constitution now in force was adopted.
The debt of which the appellee seeks payment is of that char-
acter. The assignment copied, as well as the third, fourth,
fifth and sixth, in effect, question the correctness of the judg-
ment in that it did not decree only a pro rata payment to the
appellee.

This question was considered in the case before referred to,
in which it was held that the appellant could not question the
correctness of the judgment in this respect; and, further, that
a case is not shown in which a court would be compelled to di-
rect a pro rata payment, as would it be in a case in which
many creditors having some specific claim on it could look
only to one particular fund, and that insufficient to pay all in
full. It becomes unnecessary to consider that question further.

The fact that the judgment gives to the appellee, as against
the appellant, right to be paid out of the first monies received
from named sources can not in any manner affect its right. It
neither makes its indebtedness more nor less. If it had shown
the same solicitude to protect the holders of its several series
of bonds which it now asks the court to exercise, the appellee
would doubtless have received the sum he now seeks to collect
when it became due.

The agreement of the appellant was that it would appro-
priate the revenues of its market house and markets to the
payment of the series of bonds of which the appellee holds a

part. This it has not done; but, on the contrary, has used one-half of the sum received from the rents of the lower story of the market house for other purposes; and what it may have raised for rents of parts of the upper story seems to have been used also for other purposes. It also contracted to levy, collect and set aside for the payment of the series of bonds of which appellee held a part, a tax of one-fourth of one per cent upon all the real and personal property subject to taxation by the city; and this to do annually. This it has not done. The record shows that if this had been done the debt appellee now seeks to collect would have been paid, or the money on hand to pay it. In this connection we deem it proper to say that it seems to us that the ordinance under which the bonds were issued did not contemplate that the appellant should pay rent on such rooms or parts of the market house as were constructed and used for offices of the several municipal officers, or for like municipal purposes.

There was no error in the finding of fact questioned by the second assignment; but, had there been, it could not have affected the result. The levy of an ad valorem tax of one per cent to raise money to pay interest and create a sinking fund to satisfy all its bonded indebtedness was not a compliance with the contract made with the holders of "market house" bonds; but, had it been, so far the duty of the appellant did not cease with a mere levy of even sufficient taxes to meet obligations. The appellant was under further obligation to see, and, if necessary, to compel, the collection of taxes levied, in so far as this could be done. Its charter declares "that the city council * * * may assess and collect an annual and direct tax," etc., and it provides a procedure through which this may be done if the taxes are not promptly paid to its collector. If this were not so, it could not be held that the mere levy and assessment of a tax and placing of the tax roll in the collector's hands was a full performance by the city with its duty to creditors.

Under the charter, a collector who failed to do his duty in the prompt collection of taxes, might be removed by the city council and another appointed in his place. Such an officer could be required to give a bond for the faithful discharge of the duties of his office, and on his failure to pay over taxes collected, or to collect within a reasonable time such taxes levied

and assessed as could be collected, an action on his bond could be maintained by the corporation.

This action was tried in December, 1887, and it was made to appear that there were then uncollected taxes running from the year 1879, and there is nothing to show that the city had taken the steps that it might have taken to bring these taxes into the treasury.

Such facts do not show duty to creditors performed, and the city can not shield itself from the peremptory writ of mandamus under the plea that one of its officials has failed to perform his duty, when it had the power to compel him to do so or appoint some person who would.

It is urged that the judgment made the basis of this action, wherein the appellant was commanded to pay to the appellee the sum of sixteen hundred dollars as his pro rata of the fund then in hand subject to the payment of "market house" bonds, was an adjudication which operates as a bar to the relief now sought. There are no facts shown which could give that judgment such effect. That judgment simply determined the validity of appellees' claim, and how much of the fund then on hand he was entitled to have appropriated toward its payment.

So far as it looked to the satisfaction of the appellee's claim, and directed a peremptory mandamus to issue to enforce the payment, this was in the nature of process which could not deprive him of the right to any other or further legal process found to be necessary to enable him to enforce the payment of debt adjudged to be due him.

There is no error in the judgment of which the appellant can complain, and it must be affirmed.

*Affirmed.*