## CITY OF AUSTIN ET AL V. JAMES G. CAHILL.

### No. 1423.   Decided June 22, 1905.

**1.—Practice in Supreme Court—Certified Questions.**

The Supreme Court may, in considering questions certified from the Court of Civil Appeals, determine every minor question upon which a correct decision of the general question certified may depend.   Rosetti v. Lozano, 96 Texas, 59, approved.   (P. 186.)

**2.—Municipal Bonds—Mandamus—Parties.**

The city of Austin issued $1,400,000 of water and light bonds.   Afterwards, under legislative authority, most of these bonds, as also other bonds owing by the city, were refunded, but part were not.   A holder of some of the unrefunded water and light bonds sued by mandamus to compel payment of past due interest on his bonds out of a fund consisting of collected and uncollected taxes raised under a levy by the city.   The refunding bondholders were not parties, unless so through the city.   Held, that if the holders of the refunded bonds, as to the fund, were of the same class and cobeneficiaries with holders of the unrefunded bonds, the city could not complain that the refunding bondholders were not parties, as the right to equality of payment by marshaling the fund is merely an equitable one, personal to the bondholders; but this principle is without application where the bondholders who are not parties, being of a different class, have some foundation apparent for an adverse claim to the land as exclusively theirs.   Voorhies v. City of Houston, 70 Texas, 331, and kindred cases, distinguished.   (Pp. 186–188.)

**3.—Municipal Taxation—Special Fund—Diversion.**

Where a provision of a city charter authorizes a city to levy and collect an annual tax to raise such sum as may be necessary to pay interest and accumulate a sinking fund on all bonded debts of the city, and another provision of the charter authorizes the city to refund the whole or a part of its bonded

indebtedness, and to levy such tax as is necessary to pay interest and accumulate a sinking fund on the refunding bonds, a tax levy under the latter provision creates a special fund affected with a trust, which must be applied exclusively to the refunding bonds, and which can not be diverted therefrom through mandamus, while such bonds as remain unrefunded may be provided for by an additional levy under the former provision. (Pp. 186–188.)

### 4.—Statutes—Construction.

In construing statutes, it is held (a) that a general provision of a statute must yield to a special one so far as necessary to give effect to the particular subject of the special provision, following Erwin v. Blanks, 60 Texas, 583; (b) that the Legislature must be presumed to have known, when it passed the statute, the constitutional limits of its legislative power; (c) that the courts may declare void a statute which is repugnant to he Constitution, but may not, in order to preserve the statute against constitutional objection, ascribe to it a meaning at variance with its plain import, and (d) that the legislative policy may be looked to as persuasive in a matter of doubtful statutory construction. (Pp. 187, 188.)

### 5.—Municipal Corporations—Excessive Tax Levy.

While it is true that a trust fund arising from a tax levy for one class of bondholders, as for the holders of the refunding bonds, can not be diverted for the benefit of a hostile class, as for the holders of the unrefunded bonds, yet where the levy is, in part, illegal, as in excess of the city's limit of taxation after making due allowance for authorized omitted levies having priority, and is so far in strictness returnable to the taxpayers, leaving them still subject to the imposition of the prior levies, it may nevertheless, in avoidance of circuity, inconvenience and expense, be applied, in a mandamus suit which proceeds in opposition to the trust, as a credit on an omitted prior levy. (Pp. 188, 189.)

### 6..—Municipal Corporations—Trust for Bondholders.

Where a city, under legislative authority granted by its charter, raises a fund by tax levy for the special purpose of paying interest and accumulating a sinking fund on a particular class of bonds, such as the refunding bonds noticed, the only interest of the bondholders in the fund is purely equitable, and the city holds the legal title impressed with a trust for their benefit, with the implied power and under the corresponding duty to prosecute and defend suits in its own name affecting the trust. (P. 189.)

### 7.—Mandamus—Adverse Claimants—Parties.

As a general proposition, the question of parties, under our blended system of law and equity, it to be determined by the character of relief sought, and mandamus is a common law remedy, having no connection with equitable jurisdiction and requiring as necessary respondents, ordinarily, only those who are to perform the command of the writ; and, in a mandamus proceeding, the particular question remains at large as to whether owners of mere equitable interests are necessary parties, although it is settled, as a general rule, that third persons claiming an adverse interest in the subject–matter which may be affected by the judgment, must be joined as respondents, without regard to the validity of their claims. Smith v. Power, 2 Texas, 57, and cases following it, distinguished. (Pp. 189, 190.)

### 8.—Municipal Corporations—Trusts—Parties.

Where a city, by legislative enactment, holds the legal title to a fund raised by tax levy, in trust for the benefit of bondholders who are probably numerous and unknown, with such power of management, control and investment that it may be presumed it was the intention to invest it with authority as trustee to prosecute and defend suits relating to the fund in its own name, the bondholders are not necessary parties in their own persons at the suit of a relator in mandamus, who proceeds in opposition to the trust under which the fund is held, since it is sufficient that they are constructively before the court through the city as their trustee. (Pp. 190–193.)

**9.—Mandamus—Practice—Case Limited.**

While a relator, in a mandamus proceeding, can not have less relief than the whole for which he has prayed, if the facts do not show to what part of the whole he is entitled, yet under the practice prevailing in Texas, he may obtain any part of the relief prayed, if the court can, with necessary certainty, distinguish the same and apply the command of the writ thereto. Texas Mex. Ry. Co. v. Jarvis, 80 Texas, 456, limited. (Pp. 193, 194.)

**10.—Practice in Supreme Court—Certified Questions.**

Where the question certified related to parties as applied to an existing special fund, and also as applied to a tax levy sought by the relator in mandamus, and it is apparent that substantially the whole record of the facts has been embraced in the certificate sent up, the Supreme Court is authorized to determine, as preliminary to the ultimate matter submitted, whether the question of parties concerning the tax levy is immaterial as abstract on account of the facts disclosing the absence of a cause of action for that relief. (P. 195.)

**11.—Constitutional Law—Obligation of Contracts.**

Where a city makes a valid contract for a bond issue, in which it stipulates to levy a certain tax for the payment of the bonds, subsequent legislation withdrawing or limiting the taxing power, without providing a substantial equivalent or otherwise affecting the validity or means of enforcement of the contract, violates the obligation of contracts, within the inhibition of Const. U. S., art. 1,, sec. 10, and can not affect the right of the bondholders to an assessment, levy and collection of taxes in accordance with the terms of the contract under which the bonds were issued, and in disregard of the invalid legislation, in such proportion of the entire tax as the outstanding bonds of the issue bear to the whole. (P. 195, 196.)

**12.—Mandamus to City—Necessity of Demand.**

Specific demand on and refusal of a city to levy taxes to meet bonds, in accordance with the contract under which the bonds were issued, was not a necessary prerequisite to the issuance of a writ of mandamus compelling it to make the levy, where the city's duty in the premises was unconditional, and it was evident that it would refuse to comply with the demand if one were made. (P. 196.)

**13.—Same—Judgment.**

Where part of a claim for interest on bonds has been put in judgment, and the city is under a specific contractural obligation to levy a tax to pay such interest, a judgment for the balance of the claim, and a mandamus to compel the payment of the demand, may be obtained in the same suit. (P. 196.)

**14.—Same.**

The writ of mandamus, being based on default of duty, can not direct the levy of future taxes, in advance of default, but may direct the levy of taxes during a series of future years, in redress of a default to levy them in past years. (Pp. 196, 197.)

**15.—Same—Refusal to Levy Tax.**

The neglect of a city to perform its contractural obligation to levy taxes at the time directed by law, in order to meet the interest on bonds, does not enable the city to escape that duty, but it may be forced to perform the same by mandamus relating back to the time when the levy should have been made. (P. 197.)

**16.—Municipal Bonds—Rights of Purchasers.**

Purchasers of bonds take the same subject to the law in force at the time of their issuance, including the constitutional limitation upon the taxing power of the city. (P. 197.)

**17.—Constitutional Law—Cities—Taxation.**

Const., art. 11, sec. 5, prohibiting cities of over 10,000 inhabitants to levy taxes "for" any one year which shall exceed 2½ percent of the taxable

property of the city, does not prohibit the city to levy "in" one year a tax omitted to be levied in a past year, so far as such tax is, in connection with other valid taxes, within the 2½ percent tax limit for such past year, although the levy for the year in which it is made may exceed the limit for that year. (Pp. 197, 198.)

18.—Necessary Parties.

The fact that, in the course of litigation, points of law may be determined that will make a precedent harmful to the interests of certain persons in some future litigation, is not a sufficient reason for making such persons parties. (P. 198.)

19.—Municipal Bonds—Tax Levy—Parties.

Where a holder of municipal bonds, in order to obtain payment of past due interest, proceeds by mandamus to compel a tax levy which the city had neglected to make in violation of its contractual duty, the holders of subsequent refunding bonds are not necessary parties, either actually or constructively, since they are, in so far, without interest in the controversy, the subject-matter or object of the suit. (P. 199.)

Minor, J., dissenting in part.

ON REHEARING.

20.—Supreme Court—Disqualification of Judges.

A judge of the Supreme Court is not disqualified as having been of counsel in the case, where the parties to the suit and the matters in dispute in the case in which he was of counsel, are both different. (P. 201.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The judges of the Supreme Court certified their disqualification on account of being resident taxpayers of the city of Austin, and thereupon the governor duly commissioned as the Supreme Court to hear and determine this case, the Hon. Presley K. Ewing, of Houston, Chief Justice, and Hon. S. C. Padelford, of Cleburne, and Hon. R. B. Minor, of San Antonio, associate justices, and the case was heard and determined by them.

The head notes of this decision were prepared by Chief Justice Ewing.

*Allen & Hart,* for appellants.—In order to obtain a peremptory writ of mandamus it devolves upon the petitioner to bring before the court all parties who may be interested in such decree. Watkins v. Kirchain, 10 Texas, 381; Land Commissioner v. Smith, 2 Texas, 57; S. C. 5 Texas, 471; Chappell v. Rogan, 94 Texas, 492; Texas, Mex. Cent. Ry. v. Jarvis, 80 Texas, 457; Gibbs v. Ashford, 66 S. W. Rep., 858; Tabor v. Land Commissioner, 29 Texas, 508; Ency. of Plead. and Prac., vol. 13, pp. 656 and 660.

In order for a petitioner to obtain a peremptory writ of mandamus, it is necessary for him to allege and show that a specific demand has been made by him upon the parties against whom he seeks the writ, and that such demand has been refused. Ency. of Plead. and Prac., vol. 13, pp. 616 and 617, 620, 621-624; United States v. Boutwell, 17 Wallace, 604; Merrill on Mandamus, secs. 221, 222, 223; Oroville & Va. Railway v. Plumas Co., 37 Cal., 354; People v. Mt. Morris, 137

Ill., 576; People v. Board, etc., 127 Ill., 613; Ingerman v. State, 128 Ind., 225; State v. County Judge, 7 Iowa, 186; People v. Cruger, 12 N. Y. App. Div., 536.

The two percent sinking fund provided for by the constitution of the State of Texas and general laws of the State of Texas and the charter of the city of Austin could not be appropriated or used for the payment of interest on bonds or for any other claim whatever than the redemption of bonds of the series on account of which such tax was levied and collected. Const., art. 11, secs. 4, 5, 6; Rev. Stat., arts. 416, 498; City of Sherman v. Williams, 84 Texas, 421; Clark v. Sheldon, 19 Law. Rep., Ann., 138.

No levy could be made in 1904 or thereafter of taxes that should have been levied during the year 1903. Sec. 5, art. 11, state constitution; Rev. Stat., art. 498; City of Sherman v. Smith, 12 Civ. App., 580; Duty on Tax Action, vol. 1, p. 533; Ellicott v. Levy Court, 1 Har. and J., 359; Commissioners v. Commissioners, 20 Md., 449; Board of Sup'rs W. Co. v. Klien, 51 Miss., 807; State v. Kennington, 10 S. C., 299; State v. Burbank, 22 La. Ann., 298; State v. Cornier, 21 Kansas, 433; Wells v. Commissioners, 20 L. R. A., 94; Rosenthal v. State Board, 19 L. R. A., 157; Rice v. Walker, 44 Iowa, 458; Shaudies, ex parte, 66 Ala., 135.

The 16 2-3 percent required to be levied by the judgment under the law primarily would go to the public free schools, and, it resting within the discretion of the city council to levy such tax for any other purpose, no mandamus could issue compelling its levy for any other purpose. Rev. Stat., arts. 4016, 4026; Lynch, ex parte, 16 S. Car., 32; State v. Hagood, 30 S. Car., 519.

Under the law and the facts in this case, the holders of the 3 percent refunding bonds have a preference right to the tax of 16 2-3 cents on the $100 if levied, and, they not being before the court, no judgment could be rendered appropriating such tax otherwise than to the payment of the interest upon such refunding bond. Land Commissioner v. Smith, 2 Texas, 57; S. C., 5 Texas, 471; Chappell v. Rogan, 94 Texas, 492; Texas Mex. Cent. Ry. v. Jarvis, 80 Texas, 457; Tabor v. Land Commissioner, 29 Texas, 508; Ency. of Plead. and Prac., vol. 13, pp. 656, 660.

The court erred in rendering judgment directing the levy of a tax for 1904 and the subsequent years, because it does not appear from plaintiff's pleading and evidence that the council has refused or declined to make such levy or had threatened not to make such levy or pay such claim. Commissioners v. Commissioners, 20 Md., 449; High on Extraordinary Remedies, secs. 12, 144.

It devolved upon appellee to show that he had exhausted all other remedies before he could force the city council to levy a special tax to pay his claim. Arkansas Building and Loan Assn. v. Madden, &c., 91 Texas, 462; Arberry v. Beavers, 6 Texas, 473; Merrill on Mandamus; Wood on Mandamus.

No mandamus could issue until appellee reduced his claim to judgment. Wood on Mandamus, p. 71.

FROM ARGUMENT ON MOTION FOR REHEARING.

In the case at bar, the city of Austin is one of the parties to the suit, and its mayor and board of aldermen and other officials of the city are sued in their official capacity on a matter growing out of and to collect the interest on certain bonds that were issued by the city of Austin, through its officials, some years ago. In the particular case, in which the Hon. Presley K. Ewing was of counsel, the city of Austin and its mayor, its board of aldermen and other officials were parties to the suit, the suit having been brought by a taxpayer of the city of Austin to cancel a portion of a series of bonds, and to enjoin the issuance of the other portion of such series, the bonds sued on in the case at bar being some of the identical bonds embraced in the case of Nalle v. The City, in which the Hon. Presley K. Ewing was of counsel. Slaven v. Wheeler, 58 Texas, 25; State v. Burks, 82 Texas, 584.

We strenuously insist that this court has no jurisdiction to pass upon and determine any question arising in this case, or raised by the other side to the controversy, except the one sole question as to whether or not the holders of the refunding bonds of the city of Austin were necessary parties to this suit. That is the only question that was submitted by the Court of Civil Appeals to this court, and, under numerous decisions of the regular Supreme Court, namely, Laughlin v. Fidelity Insurance Co., 87 Texas, 116; Bassett v. Sherrod, 89 Texas, 272; Mann v. Dublin Cotton-Oil Co., 91 Texas, 617; Waco Water Co. v. Waco, 86 Texas, 662; Kelley, &c., Shoe Co. v. Liberty Insurance Co., 87 Texas, 114; Evans v. Daniel, 94 Texas, 283; and Western Union Telegraph Co. v. Burges, 54 S. W. Rep., 1022, it is uniformly held that article 1043 of the Revised Statutes of the State of Texas means what it says; that whenever in any case pending before the Court of Civil Appeals, there should arise an issue of law which the court should deem it advisable to present to the Supreme Court for adjudication, "it shall be the duty of the presiding judge of said court to certify the *very question to be decided by the Supreme Court.*" And they further hold in the above and numerous cases, that the Supreme Court has no jurisdiction to pass upon any proposition involved in the case, except, "the *very question to be decided by the Supreme Court.*"

The court in the present case has not only discussed and attempted to decide, as we understand it, the questions that were discussed by the Court of Civil Appeals in the case, but have discussed at great length questions that were not passed upon by the Court of Civil Appeals or even alluded to in any shape, form or fashion; not only this, but this court has taken up and discussed questions that the Court of Civil Appeals declined to discuss or pass upon, because the appellee had not complied with the statute in any respect in filing his cross assignments in the lower court, or properly briefing them in the upper court.

As was argued in the argument of the cause in this court, this is not an ordinary case of a trustee acting for the benefit of his cestui que trust, for here the title to the very fund itself is in controversy, and an adverse claimant is asserting title to the fund to the exclusion of the beneficiary for whom the trustee is holding. The legal title is not in the trustee even, the city of Austin being a mere stakeholder of a fund

that was raised for the express purpose of paying the interest and sinking fund of the refunding bondholders alone. In order for the court to grant the relief prayed for by appellee, not only does the court have to declare invalid a contract between the city and her refunding bondholders, which contract has been executed, so far as the city is concerned, to the extent of actually setting aside the fund for the exclusive benefit of the refunding bondholders; but the court must also declare unconstitutional an act of the legislature upon which such contract is based and which is read into and forms a part of the contract. When such questions as these not only arise in the case, but must be passed upon and decided before the relief is given, can this court hold that the refunding bondholders were bound by the decision of the court in settling them adversely to such refunding bondholders? That is the test, as we take it, as to whether they were necessary parties to the suit.

Again, a much stricter rule applies in mandamus cases, or any other cases of that class calling for the granting of extraordinary remedies.

This court has fallen into error in discussing the facts in connection with the amendment shown on pages 12-15, Special Laws, first called session, 27th legislature. An examination of that act will disclose that it provides for the sinking fund to be invested in not general bonds of the city, but in the United States, state or *refunding* bonds of the city. Of course, the object and purpose was to secure an advantage to the holders of refunding bonds, and certainly the holders of other bonds of the city can not take advantage of the provisions of an invalid act, to assert right to the sinking fund and ask for the payment of their interest out of same. In addition to this, so much of said act as undertakes to provide for the payment of the interest on refunding funds out of the sinking fund is clearly invalid, as there are others interested in that branch of the case whose interest in the matter this court seems to have overlooked, namely, the persons who pay, the taxpayers. They are taxed for a definite purpose, and they are entitled to have that money applied to the purpose for which it was taken, as the law says it shall be applied. If a creditor of the city stands by, while the aldermen fail to do their duty, he has his remedy; but he should not be permitted to divert funds that he has no interest in, either by contract or statute, and which funds were collected for a special and definite purpose from the taxpayers.

Again, we say that the court fell into grievous error in so much of its decision as undertakes to pass upon the question of a levy for previous years, not only, because in conflict with all the authorities, except one intermediate court in Colorado, not only because that question was not certified to this court and the court acquired no jurisdiction of it, but so much of said holding as applies to anything except the 16 2-3 cents levy for 1903, complained of by us, was never before either this court or the Court of Civil Appeals, as they refused to pass upon the question, because they found as a matter of fact that the cross assignments of error had never been filed in the court below, and not properly before the court.

*Gardner Ruggles,* for appellee.—All the necessary parties were before the court.  Constitution of the State of Texas, art. 11, secs. 5 and 6; charters city of Austin, 1883 (Special Laws, 1883); 1891 (Special Laws, 1891); 1901 (Special Laws, 1901); Voorhies v. The Mayor, &c., of Houston, 70 Texas, 331; Mayor, &c., of Houston v. Voorhies, 70 Texas, 356; The City of Houston v. Thomas Emery's Sons, 76 Texas, 282; The City of Houston v. Thomas Emery's Sons, 76 Texas, 321; City of Galena v. Amy, 5 Wall. (U. S.), 709.

It was not necessary that appellee should have alleged or shown any formal demand on the city council for payment of his judgments and claims in order to entitle him to mandamus as prayed.  Northern P. Ry. Co. v. Washington Territory, 142 U. S., 492; Chicago, &c., Ry. Co. v. Chase Co., 49 Kan., 399; People v. Barnett, 91 Ill., 422; People v. Getzendaner, 137 Ill., 234; Columbia Co. v. King, 13 Fla., 451; State v. Racine, 22 Wis., 258; Conklin v. Cunningham, 7 New Mex., 445, 461; 13 Ency. Plead. and Prac., 616-623.

The 2 percent sinking fund provided for by the constitution and general laws of the State of Texas and the charter of the city of Austin at the time of the issue of appellee's bonds could not be appropriated to, or paid for, the interest on bonds for any claim whatever other than the redemption of bonds of the same series as appellees, on account of which alone such tax could be levied and collected.  Constitution of the State of Texas, art. 11, sec. 5; charter city of Austin, 1883 (Special Laws, 1883); charter city of Austin, 1891 (Special Laws, 1891); charter city of Austin, 1901 (Special Laws, 1901).

Appellee was entitled to payment of interest and establishment of sinking fund on his bonds, prorata, according to their several rates of interest, with the holders of the 3 percent refunding bonds, out of all moneys collected from taxes for interest and sinking fund on bonds, and such funds having been diverted by the city to payment of interest on the 3 percent refunding bonds, to appellee's exclusion, the city can not claim that the balance left of such moneys is applicable to sinking fund alone.  See authorities under preceding proposition; Mayor, &c., v. Voorhies, 70 Texas, 356.

Until a levy had been made for 1903, appellee could not have known that an insufficient levy would be made, and no particular time for levy of taxes being fixed by the charter in force at time of issue of appellee's bonds, and the provision of the charter of 1901, if that could have affected the matter, being merely directory, and such levy having been made October 24, 1903, appellee was and is entitled to have a sufficient levy ordered as prayed in his amended petition.  See previous authorities; also McConihe v. State, 17 Fla., 238; People v. Fairbury, 51 Ill., 149; State v. Franklin Co., 35 Ohio St., 458; State v. Harris, 17 Ohio St., 608; and also, as to time provision in charter of 1901 being directory, George v. Dean, 47 Texas, 73; State v. Smith, 22 Minn., 218; Peed v. Millikan, 79 Ind., 86; Smith v. Crittenden, 16 Mich., 152; Am. & Eng. Enc. of Law, 2d ed., p. 884; 2 Dill. Mun. Corp., 675.

The city council having power under the constitution to levy a tax not to exceed for any one year, for all purposes, $2.50 on the $100, and it being its duty to provide by annual taxation an amount suffi-

cient to pay the interest and a 2 percent sinking fund on appellee's bonds, and the charter in force when said bonds were issued providing for a levy of 1 percent for general purposes, and the city having, under the state law, theretofore by decision of its qualified voters fixed one-third of 1 percent as the maximum rate of taxation for support of schools, which rate has never been increased, and the city council being without power to increase said rate, the city council had power, and it was its duty for 1903 to levy, collect and apply to appellee's debt the 16,2-3 cents on the $100 (being the difference between one-half of 1 percent and the one-third of 1 percent so levied for schools), and the award of mandamus compelling such levy, collection and application was correct. Rev. Stat., arts. 4016, 4026.

The holders of the 3 percent refunding bonds had no preference right to the proceeds of the 16 2-3 cents on the $100 additional tax for 1903, if levied, because (a) their interest was fully paid; (b) if they ever had any right therein, it was only in the proportion of 3 percent interest to them payable semiannually, and 5 percent interest to appellee, payable quarterly (they having accepted bonds bearing interest at 3 percent). And in either case their presence before the court was immaterial and the judgment appropriating such 16 2-3 cents to payment of appellee's debt was correct.

The court was right in rendering judgment directing levy, collection and appropriation to appellee's interest and sinking fund of taxes for 1904 and succeeding years, because it appeared from the pleadings and evidence that the city council had continually refused to pay appellee any interest for more than four years, although it had levied and collected taxes for bonded interest and sinking fund regularly during that period and otherwise applied them, and that it was still refusing to pay him anything and threatening to persist in such refusal. See previous authorities; Brandt v. Murphy, 68 Miss., 84; State v. Rotwitt, 15 Mont., 29; State v. Wrightson, 56 N. J. L., 126; United States v. Galena, 10 Bissell, 263; State v. Weir, 49 N. W. Rep., 785; In re Whitney, 3 N. Y. Supp., 838; Coy v. Lyons, 17 Iowa, 1; Coffin v. Davenport, 26 Iowa, 515; Merrill on Mandamus, sec. 32.

The trial court had power to direct by mandamus, the levy, collection and application to appellee's bonds, as long as same remained outstanding, of taxes for 1904 and succeeding years, and appellee had the right to have such power exercised herein, in order to avoid long, expensive, vexatious and constantly recurring litigation and multiplicity of suits. See previous authorities; Saddler v. Republic, Dallam, 611; Pitts v. Ennis, 1 Texas, 605; Blair v. Gay, 33 Texas, 157; Francis v. Northcote, 6 Texas, 187; Clegg v. Varnell, 18 Texas, 304; Rush v. Bishop, 60 Texas, 177.

Appellee had alleged and shown that he had already exhausted all other remedies, although in order to obtain writ of mandamus for levy and collection of a tax to pay his debt it was only incumbent on him to show that he had no other adequate remedy for its collection. Bradley v. McCrabb, Dallam, 504; Terrell v. Greene, 88 Texas, 539; Gaines v. Rügg, 148 U. S., 228; Am. and Eng. Enc. of Law, vol. 19, p. 745.

It was not necessary, in order to entitle appellee to issue of mandamus, that he should have first reduced his claim to judgment, although

he had so reduced part of it, but judgment for his claim and mandamus for its collection could properly be had in the same suit. People v. Getzendaner, 137 Ill., 234, 260; Commissioners v. King, 3 Fla., 467; Ohio v. Commissioners, 6 Ohio St., 287; Dayton v. Rounds, 27 Mich., 82; Phillips v. School Dist., 79 Mich., 170; Merrill on Mandamus, sec. 130; High Ext. Leg. Rem., 2d ed., sec. 384; Cooley ·on Taxation, 3d ed., p. 1364, et seq.; Am. and Eng. Enc. of Law, 2d ed., p. 794.

Appellee was entitled to peremptory writ of mandamus requiring the city council to immediately levy, collect and appropriate to payment of the interest and sinking fund of his bonds (prorata with those of the holders of said $13,500 6 percent bonds and of the remainder of said $322,000 5 percent water and light bonds, and to the exclusion of the holders of the $1,281,500 3 percent refunding bonds, whose interest was fully paid), or an additional tax for interest and sinking fund for bonds for the year 1900 of $1.08 1-3 on the $100, and of such tax for the year 1902 of 76 2-3 cents on the $100. Constitution of the State of Texas, art. 11, sec. 5; East St. Louis v. Amy, 120 U. S., 600; Bowen v. West, 10 Colo. App., 322 (50 Pac. Rep., 1087), and preceding authorities.

Appellee was entitled to peremptory writ of mandamus requiring appropriation to payment of his debt, to the exclusion of the 3 percent bondholders, and prorata with the other bondholders, of the entire amount of $72,738.96 on hand in the city treasury June 22, 1904, in the interest and sinking fund for refunding bonds, and the city was not entitled to withdraw therefrom said day $19,245.77 and pay therewith the July 1, 1904, interest on the 3 percent refunding bonds.

FROM ARGUMENT ON MOTION FOR REHEARING.

It is not contended that Judge Ewing has ever been consulted about, or has ever advised in, the case at bar, either in its inception, preparation or course through the courts. The only way in which he could ever have been said, or even imagined, to have been counsel in the case, is on account of his connection with the Nalle case, nearly fifteen years ago, when he participated, as counsel, in the presentation of that case to the Supreme Court. See King v. Sapp, 66 Texas, 519; Cullen v. Drane, 82 Texas, 484; and Nicholson v. Showalter, 83 Texas, 101. If Judge Ewing, upon the facts set forth by this record, is disqualified to sit in this case, then judges will have to be sought elsewhere than from the ranks of counsel practicing at the bar.

The force of the authorities cited by appellants is not denied, in cases to which they may be applicable, but appellee insists that they are not in point in this case. It is plain that the Court of Civil Appeals could not certify an entire record to this court and ask that this court decide the case, nor could this court certify to the Court of Appeals, in such a case, an answer telling that court how to decide it, but it is equally plain that, in certifying a question to this court, the Court of Civil Appeals must certify everything before it pertinent to the question, and that this court must consider and determine the effect upon its answer of everything the pertinency of which has been so certified.

EWING, CHIEF JUSTICE.—Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

This was a mandamus proceeding brought in the District Court by James G. Cahill to enforce payment by the city of Austin, through mandate against its proper officers, of alleged indebtedness, partly reduced to judgment, claimed to be due him for interest accrued on certain water and light bonds issued by the city. Judgment went in his favor, but it was reversed by the Court of Civil Appeals (12 Texas Ct. Rep., 285). The case, as it comes here on questions certified pending a motion for rehearing, is substantially as follows:

Austin, when the present constitution of Texas took effect, was a city of more than ten thousand inhabitants, existing by special charter (Special Laws, 13th Leg., p. 215), which was amended by act approved April 17, 1883 (Special Laws, 18th Leg., p. 36), and by a substitutional act passed in 1891 (Special Laws, 22d Leg., p. 101). Subsequently, besides intermediate amendments not necessary to notice, the charter was further amended by another substitutional act approved April 13, 1901 (Special Laws, 27th Leg., p. 60), which was itself amended by two additional acts, one approved September 18, 1901, and the other September 21, 1901, the latter being the refunding act mentioned below (1st called sess., 27th Leg., pp. 8 and 12). In order to provide itself with an adequate supply of water and light, being thereunto duly authorized, the city issued, and between October 15, 1890, and January 30, 1895, sold and delivered fourteen hundred bonds of a thousand dollars each, aggregating one million four hundred thousand dollars, dated August 1, 1890, payable to bearer on July 1, 1930, but redeemable at the city's option at any time after June 30, 1910. These bonds bore interest at the rate of five percent per annum, payable quarterly on the first days of January, April, July and October of each year, as evidenced by the interest coupons thereto attached. The proceeds of the bonds were applied to providing the city with water and light by a system of obtaining power from damming the Colorado River. The ordinance authorizing the holding of an election looking to the issuance of said bonds was dated April 1, 1890, and was ratified by the necessary two-thirds vote of the taxpayers of the city at an election held May 5, 1890. It was provided by the ordinance under which the bonds were issued and sold, that there should be levied and collected for the year 1890, and for each year thereafter while said bonds remained outstanding, a tax of one dollar and eleven and a half cents on the hundred dollars' worth of taxable property in said city, for the payment of interest on said bonds and to provide the two percent sinking fund for their redemption, and that the net income arising from receipts of said water and light system, or so much thereof as was necessary, should be applied, and such receipts were pledged, to the payment of said bonds, interest and sinking fund, the rates of which system it was further provided should be so regulated as to produce sufficient revenue to pay current expenses, interest and sinking fund. The appellee, Cahill, became the owner of fifteen of said bonds, with interest coupons attached, upon which the interest appears to have been paid up to and including the installment falling due April 1, 1900, but no interest accrued thereon since that date has been paid. The system for water and light, put in operation as above stated, was destroyed in April, 1900, but this was replaced by a steam

plant that was put in operation by June 1, 1901, the city being meantime without a system for water and light. The refunding act authorized the city to compromise and scale its bonded indebtedness, or any part thereof, by issuance in even exchange therefor of refunding bonds, bearing date July 1, 1901, payable July 31, 1931, with interest for the first five years at three percent per annum, for the next ten years at four percent per annum, and after July 1, 1916, at the rate of five percent per annum to maturity, the interest to become payable semiannually on the first days of January and July in each year. These bonds were made redeemable by the city at its option on the date of any interest payment. The refunding act also provided for the levy of a tax of one dollar and sixteen and two-thirds cents on the hundred dollars' valuation, or such part as might be necessary, to pay the interest and a two percent sinking fund on such refunding bonds. The city's council, by ordinance passed November 5, 1901, provided for the issuance of the refunding bonds, to be exchanged for the city's outstanding indebtedness to the extent that the owners might be willing to accept the same in substitution. The city had, when its water and light bonds were issued, an outstanding indebtedness of a hundred and twenty-five thousand dollars, of which the sum of seventy-two thousand five hundred dollars was indebtedness legally made and undertaken before the present constitution of Texas became operative. This indebtedness bore interest at six percent per annum, except the part of seventy-two thousand five hundred dollars, which bore interest at ten percent per annum, until April 1, 1895, when it was reduced to six percent. Subsequently the city incurred other indebtedness, consisting of two hundred thousand dollars in a new series of water and light bonds, bearing six percent per annum interest, issued July 1, 1895, and consisting of forty-five thousand dollars of high school bonds, bearing interest at five percent per annum, issued August 1, 1899, but ten thousand dollars in amount of the first-named issue were retired September 21, 1901, leaving a balance unpaid of that issue of one hundred and ninety thousand dollars. The owners of the original issue of water and light bonds to the amount of nine hundred and thirty-five thousand dollars accepted refunding bonds in exchange, and the further amount of one hundred and forty-three thousand dollars thereof had previously been retired and cancelled, leaving in amount three hundred and twenty-two thousand dollars of the original water and light bonds, including appellee's, the owners of which have in no manner consented to the refundment. The owners of the other bonded indebtedness herein mentioned, including that existing when the water and light bonds were issued, have accepted refunding bonds, except the amount of thirteen thousand five hundred dollars, being part of the indebtedness existing when the present constitution of Texas took effect. Thus, there are outstanding of the refunding bonds one million two hundred eighty-one thousand five hundred dollars in amount, and of the original issue of water and light bonds three hundred and twenty-two thousand dollars in amount, and of the old indebtedness thirteen thousand five hundred dollars in amount, making a total of one million six hundred and seventeen thousand dollars. The total tax levied by the city on the hundred dollars' value was, for the year 1900, one

dollar and forty-one and a third cents, consisting of seventy cents for general purposes, thirty-three and a third cents for schools, and eight cents for interest on bonds issued prior to May 1, 1890; and, for the year 1901, two dollars and fifty cents, consisting of one dollar for general purposes, thirty-three and a third cents for schools, and one dollar and sixteen and two-thirds cents for interest and sinking fund on bonds; and, for the year 1902, one dollar and seventy-three and a third cents, consisting of one dollar for general purposes, thirty-three and a third cents for schools, and forty cents for interest and sinking fund on bonds; and for the year 1903, two dollars and thirty-three and a third cents, consisting of one dollar for general purposes, thirty-three and a third cents for schools, and one dollar for interest and sinking fund on bonds. The taxable values of the property subject to taxation by the city for these years are not shown in the state of facts certified here, as the only mention of them is by reference to the appellee's petition which is not embraced in the certificate. The only bond tax levied since the year 1900 was to provide interest and a sinking fund for the refunding bonds, the interest on which bonds has been regularly paid. To the credit of this fund, arising from the levy therefor, is the sum of fifty-three thousand five hundred twenty-three dollars and nineteen cents, being the balance remaining after payment of the installment of interest due July 1, 1904, on the refunding bonds. There is also to the credit of this fund, arising in like manner, the sum of twenty-six thousand four hundred six dollars and forty-three and one-tenth cents, uncollected taxes for the years 1901 to 1903, inclusive. No net receipts from the water and light system have been applied to the payment of unpaid interest or sinking fund on the unrefunded bond debt. Since June 1, 1901, there have been no net receipts except about twenty-five thousand dollars in amount a year, all of which has been applied by the city in the extension, repair and improvement of its present system. The appellee recovered judgments, bearing date March 5 and April 19, 1902, for the installments of interest on his bonds which fell due on and between the dates of July 1, 1900, and October 1, 1901, being for the sum of eleven hundred ninety-six dollars and six and three-fourths cents, and he had judgment in the instant action for the interest which accrued on and between the date of January 1, 1902, and April 1, 1904, being for the sum of two thousand and twenty-six dollars and ninety cents. Upon the prior judgments there were nulla bona returns on executions duly issued. The city has no property out of which the judgments could be satisfied on execution, and it had refused to pay the appellee's demands, upon which said prior judgments were recovered, before suit brought therefor, notwithstanding demand of it for payment by appellee. There was no formal demand for the relief sought by the petition for mandamus before suit therefor was brought, but the petitioner's attorney had been told, on several occasions, by the city's mayor, its finance committee and its attorney, that the city would not pay him anything more or make any other or further arrangement with him than had already been made with holders of bonds that had been refunded into three percent bonds. The appellee claimed that the holders of the unrefunded bonds, of whom he was one, were entitled to the money in the treasury and uncollected taxes men-

tioned herein to the exclusion of the other bondholders. The appellee's suit was brought on August 25, 1903, and service thereon made by December 5, 1903, but trial was had on his second amended original petition which was filed in the cause on May 5, 1904, and which set up for relief the facts substantially as herein stated. None of the holders of the refunding bonds were made parties, the only respondents being the city and its officers. The prayer of the appellee, in asking for the writ of mandamus, was that the writ should extend, in effect, to three separable and distinct items of relief, (1) to compel the municipal authorities to allow him payment out of the money in the treasury above mentioned; (2) to compel the municipal authorities to allow him payment out of the uncollected taxes mentioned above; and (3) to compel the municipal authorities, to the extent of deficiency of payment, to levy, assess and collect, for the omitted years of the past and in the future, taxes sufficient to satisfy appellee's demands already accrued, and also sufficient to pay the interest and requisite sinking fund on appellee's bonds in the future. The trial court gave judgment in favor of appellee, allowing him payment out of the money in the treasury, amounting to fifty-three thousand five hundred and twenty-three dollars and nineteen cents, pro rata with the remaining unrefunded water and light bonds, and allowing him payment out of the uncollected taxes, amounting to twenty-six thousand four hundred and six dollars and forty-three and one-fourth cents, pro rata with those equally entitled with him, and granting him a tax levy for the year 1903, as also for the year 1904 and subsequent years, to be shared pro rata with those equally entitled with him, but denying him any tax levy for the years 1900 and 1902, on the ground that the same was prevented by the constitutional limit on the taxing power of two and one-half percent. The trial court overruled demurrers interposed by the respondents, in effect, that the refunding bondholders ought to have been made parties to the suit, but the Court of Civil Appeals reversed this ruling, holding that they were indispensable parties.

Both the opinion of the Appellate Court and the conclusions of the trial court are embraced in the certificate transmitted here, and from them we have made the foregoing statement of the case. The certificate declares that there are a number of cases in the Appellate Court dependent upon the decision of this case, and that by reason of that fact, as also the public interest involved, the following questions are submitted for our decision:

"First. In view of the averments of the plaintiff's petition, as set out in the opinion of this court, when considered in the light of the facts as found by the trial court, did this court err in holding that the other bondholders described in the pleadings and the facts were necessary parties to this proceedings, in order for the trial court to award the mandamus prayed for in plaintiff's petition?

"Second. Did this court err in reversing the case on the ground that the trial court erred in not sustaining appellant's demurrers to plaintiff's petition, because the other bondholders therein described and mentioned, who were not parties to these suits, were not made parties and joined in the suit by the appellee; or, in other words, were such bondholders necessary parties in order for the plaintiff to recover the judg-

ment rendered by the trial court in awarding the writ of mandamus, as prayed for by the plaintiff?"

The questions. certified, it will be observed, resolve themselves practically into the inquiry, Did the Court of Civil Appeals err in deciding that the refunding bondholders were indispensable parties to the proceeding? In logical order, we first give attention to it in its bearing on the items of relief relating to the money in the treasury and uncollected taxes. To take other than a superficial view of the subject, it is necessary to look into the substantive relation of the parties to the fund comprising the money and uncollected taxes, which may be properly done, as we are authorized to determine every minor question upon which may depend a correct decision of the general question certified as to parties. Rosetti v. Lozano, 96 Texas, 59.

Considering a contention much pressed in the argument, we observe that if the tax levy from which this fund arose, though ostensibly for the benefit of the refunding bondholders, was in legal effect for the equal benefit, aside from the rate of interest, of all the city's bondholders, without any foundation for an adverse claim to the contrary, there would be no difficulty in determining that the refunding bondholders were not necessary in the sense of indispensable parties. In that event, the case would in so far fall within the ruling frequently made, that it does not lie with the city to object that others of the same class of bondholders are not parties and may be deprived of equal participancy, when no effort has been made by the bondholders in whose interest the plea is urged, to marshal the fund. Voorhies v. City of Houston, 70 Texas, 331; City of Galena v. Amy, 5 Wall., 709; Meyer v. Porter, 65 Cal., 67; 2 Pac. Rep., 884; Ward v. Piper (Kan.), 77 Pac. Rep., 699. The reason which justifies this ruling is doubtless found in the consideration that, while the fund is to be held exclusively for the beneficiary class, yet the persons in that class have no specific lien upon the fund, and no right to equality of payment beyond the rule that "equality is equity," so that within the class the fund is like any other property of a debtor subject to execution, the mandamus being in that sense a mode of execution (Chanute v. Trader, 132 U. S., 210), and the other creditors of the class being left to their remedy in equity of marshaling the fund under the rule of equality obtaining in that system. Pomeroy's Eq. Jur., vol. 1, secs. 405, 407.

Is it possible upon the facts, however, to adjudge that the tax levy was, in effect, for the benefit of all the city's bonded debt? The language of the legislative enactment and the city's ordinance, the one authorizing and the other making the levy, can not be so construed as to warrant an affirmative answer. The charter provision (sec. 37), in words free from any ambiguity, gave the city authority to refund the whole *or a part* of its bonded indebtedness, and to levy a tax of so much of the specified percentage *as was necessary* to pay interest and two percent sinking fund on the refunding bonds; and the ordinance, in making the levy, did so for the particular purpose so authorized. Another provision of the charter (sec. 33, par. 2) authorized the city to levy and collect an annual tax to raise such amount as might be "necessary to pay interest and two percent sinking fund annually on *all* bonded debts of the city." Special Laws, 27th Leg., 1st called sess.,

p. 12.  It was evidently not the intention of the legislature to make the tax authorized under the refundment exclusive of a tax to be levied for the city's bonds other than the refunding ones.  The purpose in the legislative mind manifestly was to provide under the section 37 for a levy to pay the refunding bonds, but to leave power in the city under the section 33 to make another and additional levy to pay such bonds as might remain unrefunded.  This is made more obvious by considering the two sections together, the one as applying to its particular subject, the refunding bonds, and the other to its general subject, *all* bonded debt, for in that way we preserve the canon of construction that a general provision must yield to a special one so far as necessary to give effect to the particular subject of the latter.  Erwin v. Blanks, 60 Texas, 583.  Much strength is also imparted to this view by the consideration that the legislature must be presumed to have known that it was not within its constitutional power to impair the contract with the holders of the unrefunded bonds by withdrawing the taxing powers which was a part of the obligation of that contract.  U. S. Const., art. 1, sec. 10.

It is to be borne in mind that we are now dealing with the meaning, not the validity, of the legislation in question.  It may be quite true that a tax imposed by subsequent legislation, after making proper allowance for the tax to be levied as part of the obligation of the previous contract, would be void in so far as in excess of the limit of the city's taxing power (Texas Const., art. 11, secs. 5 and 6) ; but in this no warrant can be found, in construing the legislation in hand, to depart from its obvious intent.  It is of paramount importance at all times that the three coordinate departments of government be maintained in independence, each of the others, without encroachment or transgression.  The judiciary above all, on account of the peculiar position it occupies in the construction and interpretation of law, should scrupulously keep within its sphere, following the ancient landmarks so far as adapted to modern conditions, and avoiding always the reproach of undertaking to legislate directly or indirectly.  Applying this salutary rule, it might be proper to treat the subsequent legislation as void and of no effect, under constitutional restraint, so far as it may, according to its true intent and meaning, impair the obligation of a prior contract, but it would not be proper to ascribe to it a meaning at variance with its plain import, so as to conform it either to constitutionality or wisdom.

Thus viewing the legislation being considered, it appears quite indubitable that the legislative intent was to make the proceeds of the tax levy for the refunding bonds a special fund in the hands of the city for the specific purpose of paying interest and the two percent sinking fund on these bonds to the exclusion of all others.  The effect of legislation so providing has become elemental.  "It is a very generally recognized rule that, in appropriating or disposing of tax funds, money raised for a specific purpose can not be used for any other purpose."  27 Am. & Eng. Ency. of Law, 2d ed., p. 807.  The reason is quite obvious.  Since the fund is raised for the benefit of a particular class, it is in a special sense impressed with a trust for that class, and hence to divert it would necessarily be to misapply it.  The principle

was given effect by this court in City of Sherman v. Williams, 84 Texas, 421, 423, in which it was held that taxes raised to pay the interest and provide a sinking reserve to satisfy designated indebtedness was a special fund and could not be diverted or used for some other purpose. The legislative policy, which may be looked to as persuasive in a matter of doubtful construction, appears to be in accord, as manifested by arts. 416 and 498, Rev. Stat., though these articles have direct application only to municipalities incorporated under the general law and not to cities existing by special charters. There may be exceptions to the general rule we are discussing, but these exceptions are more apparent than real, and nothing is perceived in the facts to bring the instant case within any recognized exception. It may be true, for example, that it is sometimes competent in administrative matters, no statutory inhibition existing, to apply a tax professedly raised for one purpose to some other legitimate purpose. Long v. Richmond County, 76 N. C., 273, 280. But this can give no sort of warrant to divert a fund arising from a tax levied by special authority from the legislature, when that fund is made part of a contractual obligation, running beneficially to a particular class. It follows from what has been said, that the refunding bondholders, as to the money and uncollected taxes, must be regarded, in determining the matter of parties, as occupying the position, not of cobeneficiaries of the same class, as in the cases before cited, of which Voorhies v. City of Houston, 70 Texas, 331, is a fair type, but of adverse claimants, which serves at once to distinguish their attitude, and therefore they can not be dispensed with as parties on the authority of that line of cases.

At first blush, it might appear, under the conclusion just announced, that the question of parties on this branch of the case had become unimportant, since the officers having custody of the special fund under consideration, if appellee was not one of the class for whose benefit it was created, would have no right to divert or use it for other than the particular purpose for which it was created, and it is well settled that the writ of mandamus will not go to compel officers to perform what they are under no duty to do, but under duty to desist from doing. De Poyster v. Baker, 89 Texas, 155. But we can not admit that view as conclusive of the question. If, on the full facts set up in appellee's petition, it should appear under principle to be discussed in another part of this opinion, that the tax levy for the refunding bonds, after making due allowance for other authorized levies having priority, was in part in excess of the city's limit of taxation, it would in so far be illegal and, in logical strictness, the fund arising from such illegal levy would be returnable to the tax-paying inhabitants, leaving them still subject to the imposition of the prior levies; but, in avoidance of circuity, inconvenience and expense, no objection is perceived to the application of such illegal fund as a credit on an omitted prior levy, in diminution of the tax to be raised thereunder. The taxpayers being subject to the payment of the fund, it would be to require the doing of a vain and useless thing to compel the payment to them of the illegal fund with one hand and to take from them with the other the exact equivalent in a legal fund. Every illegal dollar may be justly treated as the representative of the legal, the legality of the one neu-

tralizing the illegality of the other.  The maxim applies, Lex nil frustra jubet.  The right in the city to so apply the fund, if it should be found to exist, would imply the correlative duty to do so, as concerns its compulsion by mandamus.  Thus, it may be that the holders of the unrefunded water and light bonds, proceeding in hostility to the trust under which the refunding bondholders claim, will be able to reach some or all of the money and uncollected taxes under consideration, and therefore the question of parties as to that fund must be determined.

Whatever interest the refunding bondholders may have in the money and uncollected taxes is purely equitable, with the city holding the legal title impressed with a trust for their benefit.  Commissioners v. Walker, 6 How. (Miss.), 143; s. c. 38 Am. Dec., 433; Coler v. Commissioners, 89 Fed., 260; 27 Am. & Eng. Ency. of Law, 2d ed., 868.  The case of Commissioners v. Walker, ubi supra, is both pertinent and instructive. The State of Mississippi, in chartering the Planters Bank, provided that the state should issue bonds, the proceeds of the sale of which should be used in the purchase of stock in the bank, and that the surplus of dividends beyond paying the interest on the bonds should "constitute a sinking fund under the management" of several specified bank officers for the redemption of the bonds.  The court held, among other things, that a trust might be created by a legislative enactment, and that the legislative enactment there in question had created a trust in the designated officers of the sinking fund for the benefit of the holders of the bonds, and that the trust might have been conferred on the corporation as trustee instead of on its officers, and that these trustees had not only the power to sue and defend as to the fund, but the implied power to loan it by way of investment.  Chief Justice Sharkey, in the course of the opinion, uses this language: "The general rule now is, that all persons capable of confidence, and of holding real or personal property, may hold as trustees.  Corporations may now hold as trustees, although they could not be seized to a use before the statute. Willis on Trustees, 32-33-8, Law Lib.  Two of these trustees are officers of a corporation, and as free from objection as the entire body corporate, and if the corporation was capable of holding as trustees, surely two of its officers may."  Was a trust created by the act which originated the sinking fund?  A trust is said to be "an obligation upon a person arising out of a confidence reposed in him, to apply property faithfully and according to such confidence."  Willis on Trustees, 2. To constitute a direct trust there must be a conveyance or transfer to a person capable of holding it; there must also be an object or fund transferred, and a cestui que trust or purpose to which the trust fund is to be applied.  No particular words are necessary to constitute a trust; but if it be the plain intention of the parties to create a trust, it will be regarded as such.

It has been settled in Texas, since a very early day, that third persons, claiming an adverse interest in the subject-matter which might be affected by the judgment, must be joined as respondents in a mandamus proceeding without regard to the validity of their claim, which the court will not adjudicate in their absence.    Smith v. Power, 2 Texas, 57 and s. c., 5 Texas, 471; Tabor v. Land Commissioner, 29 Texas, 508; Chappell v. Rogan, 94 Texas, 492; Texas Mex.

Ry. Co. v. Jarvis, 80 Texas, 456. These cases, though correctly decided on their facts, constitute an exceptional class and appear to us to go to the extreme in reason and the verge of authority. (See Jones v. Welsing, 52 Iowa, 220, 222; Cooper v. City of Brooklyn, 114 N. Y., 19, and cases cited.) Independent of this rule as to adverse claimants, the only necessary respondents in a mandamus proceeding are those who are to perform the command of the writ. Gaal v. Townsend, 77 Texas, 465. These decisions in respect to adverse claimants do not involve the question, nor do any of them, as to whether the owners of equitable interests are necessary parties, if the representative of the legal title is before the court, and therefore that particular question remains at large.

Mandamus is a common-law remedy, having no connection with equitable jurisdiction. 13 Ency. Plead. & Prac., 491, for cases cited. While it partakes of an ordinary civil action, it is in many respects sui generis in our practice, being returnable under a rule peculiar to itself (Fitzhugh v. Custer, 4 Texas, 391), and being without the pale of our ordinary rules for defensive pleading (May v. Finley, 91 Texas, 354). It is true that, under our blended system of law and equity, the question of parties may often have to be determined as a mixed matter of law and equity. As a general proposition, however, the solution of this question will depend upon the rules obtaining at common law or in equity, according as the relief sought is legal and equitable. Illustrations of this are numerous in our decisions, among which we instance the ruling frequently made that, in the case of promissory notes and choses in action generally, no account is to be taken of the holders of merely equitable interests as parties. Texas Western Ry. Co. v. Gentry, 69 Texas, 625, 631, and Cleveland v. Heidenheimer, 92 Texas, 108.

There is a line of decisions in the United States and Texas Supreme Courts which bear closely upon the precise facts of the case under consideration. In Vetterlein v. Barnes, 124 U. S., 169 (1st ed., 400), an assignee in bankruptcy sued to cancel as fraudulent an assignment of policies of insurance to a trustee for the benefit of the assignor's wife and children, without making the wife or children parties. The court, after conceding the general rule that cestuis que trust ought to be made parties in order to enable them to defend for themselves, held that the rule was without application where the plaintiff's claim was made, not in recognizance or in furtherance of the trust, but in opposition to it, and accordingly sustained the suit without the wife or children being parties. Kerrison v. Stewart, 93 U. S., 144, was the case of the trustee of a mortgage made for the benefit of creditors, in which the question as to the duty to make the creditors parties arose. The court, through Mr. Chief Justice Waite, thus held: "It can not be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary

parties to a suit by him against a stranger to enforce the trust. Shaw
v. Norfolk C. R. R. Co., 5 Gray, 171; Bifield v. Taylor, 1 Beat., 91
(1 Molloy, 193); Campbell v. R. R. Co., 1 Woods, 376; Ashton v.
Atlantic Bank, 3 Allen, 220; or to one by a stranger against him to
defeat it in whole or in part. Rogers v. Rogers, 3 Paige, 379; Wake-
man v. Grover, 4 Paige, 34; Winslow v. Minnesota & P. R. R. Co.,
4 Minn., 317; Campbell v. Watson, 8 Ohio, 500. In such cases, the
trustee is in court for and on behalf of the beneficiaries; and they,
though not parties, are bound by the judgment, unless it is impeached
for fraud or collusion between him and the adverse party. The prin-
ciple which underlies this rule has always been applied in proceedings
relating to railway mortgages, where a trustee holds the security for the
benefit of bondholders. It is not, as seems to be supposed by the coun-
sel for the appellants, a new principle developed by the necessities of
that class of cases, but an old one, long in use under analogous circum-
stances, and found to be well adapted to the protection of· the rights
of those interested in such securities, without subjecting litigants to
unnecessary inconvenience." In Richter v. Jerome, 123 U. S., 233,
the court thus disposed of the claim that the bondholders were neces-
sary parties: "All the rights the bondholders have or ever had in the
mortgage, legal or equitable, they got through the trust company, to
which the conveyance was made for their security. As bondholders
claiming under the mortgage, they can have no interest in the security
except that which the trustee holds and represents. If the trustee acts
in good faith, whatever binds it in any legal proceedings it begins and
carries on to enforce the trust, to which they are not actual parties,
binds them. Kerrison v. Stewart, 93 U. S., 155; Corcoran v. Chesa-
peake & O. Canal Co., 94 U. S., 741; Shaw v. Little Rock & Ft. S. R.
Co., 100 U. S., 605. Whatever forecloses the trustees, in the absence
of fraud or bad faith, forecloses them. This is the undoubted rule."

In Ebell v. Bursinger, 70 Texas, 120, it appeared that Annie Bur-
singer executed to John Ebell a deed conveying. to him certain lots in
trust for the benefit of his daughter, Annie Ebell. Annie Bursinger,
who was not a third party, claiming in opposition to the trust, but who
was the maker of the trust itself, brought suit against the trustee alone
to set aside the deed on the ground that it was procured by threats and
intimidation. The question arose as to whether the cestui que trust,
Annie Ebell, was a necessary party to the suit, and on that question
the court, speaking through Mr. Justice Gaines, thus observed: "As
to the first question the general rule is well established that in suits
by or against the trustee for the recovery of the trust property the
beneficiary is a necessary party. (Boles v. Linthicum, 48 Texas, 224;
Huffman v. Cartwright, 44 Texas, 296; Hall v. Harris, 11 Texas, 300;
Woodward v. Wood, 19 Ala., 213; Van Doren v. Robinson, 1 C. E.
Green, 256; Richards v. Richards, 75 Mass., 313; Ward v. Hollins,
14 Md., 158; I Daniel's Chan. Prac., 5th ed., p. 220, note 1; Story's
Eq. Plead., sec. 207; 2 Perry on Trusts, sec. 873.) To this rule there
are well recognized exceptions, but these embrace mainly that class of
cases where by reason of the number of the beneficiaries it is incon-
venient to make them parties, and where it may be presumed that it
was the intention to invest the trustees with power to prosecute and

defend suits in their own names. An apt illustration of the exception is found in the case of the trustees in a mortgage to secure a series of negotiable bonds upon the property of railroad companies. (Shaw v. Railroad, 71 Mass., 162.) Another illustration is afforded by the case of an assignee in a deed of an assignment made by an insolvent for the benefit of his creditors. (Kerrison v. Stewart, 93 U. S., 155.) The appointment of an assignee in such cases generally grows out of the necessity of having some agent to act for beneficiaries, who are usually too numerous to act together. In such a case the presumption is great that he is their representative not only as to the general management of the assets, but also to prosecute and defend suits involving title to the assigned estate."

In the City of Sherman v. Williams, 84 Texas, 421, it was developed that a lot of land had been taken by the city to meet a tax collector's default as to a special fund created in the interest of outstanding bondholders. A judgment creditor of the city levied execution upon the property and caused it to be advertised for sale, when the city brought suit to enjoin the sale on the ground that the property, being held by it for the special fund mentioned, was not subject to sale to satisfy the execution. The city, it is apparent, was acting in effect as trustee for the outstanding bondholders, but the right of the city to maintain the suit was not questioned by counsel or the court, and the final relief prayed for was granted. This case is cited as persuasive, since it tends to show that the general view has been to treat the city as the representative of the outstanding bondholders in all cases of attack upon a special fund in its hands held for their benefit.

In Preston v. Carter, 80 Texas, 388, 391, it was objected that a beneficiary of a general assignment made to a trustee for the benefit of creditors was not a party; but the objection was denied. The court approvingly quoted from the Kerrison case, ubi supra, held: "The general rule is well known that 'in suits by or against the trustee for the recovery of the trust property the beneficiary is a necessary party.' Ebell v. Bursinger, 70 Texas, 122. An illustration is given in the case cited of well recognized exceptions to this rule. One of these exceptions will be found in the case of an assignee in a deed of assignment made by an insolvent for the benefit of his creditors. Ebell v. Bursinger, 70 Texas, 122."

We can not distinguish in principle the case at bar from the cited cases. Not only in the case of the trustee of mortgage securities is persuasive analogy found, but also in the case of the administrator of a decedent's estate; for, in the latter event, the trusteeship of the administrator is created by legislative enactment as in the instant case. It is familiar that the creditors represented by an administrator are not necessary parties to suits by or against him. The exception noted in the cited cases of parties being numerous or unknown is doubtless here present. The city has the control and possession of the fund in question, and the writ of mandamus in a case like this, as we have seen, is but a mode of execution. If the refunding bondholders are the exclusive beneficiaries of the money and uncollected taxes, they are so only by virtue of the legislative enactment on that subject as contained in the city's amended charter. This enactment, in that event, had the

effect to grant the city the legal title to the fund for their benefit, coupled with the power in the city to create the fund by levy and collection, to periodically distribute some of it in the payment of interest, and to invest the sinking fund part by loan in the modes prescribed by law, giving preference in the payment to interest if the fund was short in the amount necessary to pay interest and create the requisite sinking fund (see Sp. Laws, 1st called sess., 27th Leg., p. 12). Whether or not the city became a trustee in technical strictness is unimportant; it was at least made such in the broad sense of the term, with all the substantial attributes of a trustee as concerns the question of parties being considered. Its attitude is that of a public agency, an intermediary between the taxpaying inhabitants and the tax-receiving bondholders, and its function is in the nature of a public trust. It was given, either expressly or by implication, not only the right to manage and in part invest the fund, and not only the right to sue for its collection, but the right as well to defend against every adversary seeking its depletion. It is, in brief, the lawful conservator of a specific property for a particular trust purpose, and its duties in that respect are commensurate with its powers. It became entitled to make, and it is its duty to make, every defense for the beneficiaries against an opposing claim that they could make if before the court in their own proper persons. Being invested with such powers and subject to such obligations, those for whom it holds will necessarily be bound by what is done against as well as by it; and in a suit by a stranger, brought in opposition to the trust, the beneficiaries are not necessary parties, being constructively before the court through their trustee. The refunding bondholders have no rights to the fund in question, and never had any, except as gotten through the city by virtue of the grant to it for their security, and they therefore can have no interest in the security beyond that which the city as their trustee holds and represents.

It is not perceived that the point of practice ruled in Texas Mexican Ry. Co. v. Jarvis, 80 Texas, 456, can militate against the conclusion at which we have arrived. There is a line of authorities, freely cited and quoted from in Mr. Chief Justice Stayton's opinion in that case, to the effect that, in a mandamus proceeding, only the exact relief prayed for can be granted, no more or less, but the point actually ruled by the court was that the petitioner could not have less relief than the whole, *if the facts did not show to what part of the whole he was entitled.* The wisdom of the decision is evident, as the writ must necessarily be sufficiently certain and definite to be intelligently enforced; but to go beyond the point actually decided would be to blindly follow a rule where the reason has ceased to apply. The only foundation for the practice obtaining in a few jurisdictions of granting the relator the whole or none of the relief, is the technical one that the peremptory writ must conform with the alternative (13 Ency. Plead. & Prac., 684, 685, for cases cited), a reason wholly illusive in our system of procedure under which the preliminary pleadings may properly consist of merely a petition and rule to show cause. The precise point, however, sought to be sustained by the Jarvis case seems to be that the refunding bondholders are at least necessary parties as to the sinking-fund

portion of the money and uncollected taxes in question with nothing in the facts to distinguish the interest from the sinking fund, although by the charter to be kept and paid out under separate accounts. The point, if the refunding bondholders be regarded as before the court through the city as their trustee, is germane rather to the merits than to the matter of parties. Besides, the provision contained in section 33 of the amended charter relative to keeping and paying out the interest and sinking fund parts separately, as quoted in the opinion of the Court of Civil Appeals (Sp. Laws, 27th Leg., p. 67), was entirely omitted from the later amendment of that section of the charter, being the amendment under which the refunding bonds were issued. Not only so, but by this later amendment it was provided that if, for any reason at any time, the maximum tax possible as there authorized was insufficient for both interest and sinking fund, then the taxes for any year should be first applied to the interest of that year (Sp. Laws, 1st called sess., 27th Leg., pp. 12-15). Independent of this provision of the charter just cited, it is deemed quite clear that, in the absence of some legislative inhibition, the interest payable out of the fund, held both for interest and the sinking reserve, can not be withheld on the theory of preserving intact the requisite sinking fund. To do this would be to give the sinking fund a priority of right over the interest, unwarranted and arbitrary. Such being the state of the case, it is not apparent how the condition of the interest and sinking fund accounts can become important. Even if the holders of the unrefunded bonds were entitled to reach the money and uncollected taxes as cobeneficiaries with the refunding bondholders, they very plainly could not be affected by the condition of such accounts under the present provisions of the charter on the subject. If they are entitled to reach the fund on the theory of its being the product of a levy in excess of the city's power and void as to them, and for that reason open to their claim in avoidance pro tanto of further levy in their behalf, then the right in them on that ground would be in opposition to the trust in favor of the refunding bondholders, and therefore no divisional lines between sinking fund and interest, fanciful or real, could apply as to them. Thus, if the holders of the unrefunded bonds have the right in any event to reach the money and uncollected taxes, it is yet apparent that, in neither of the conditions under which that right could be claimed to exist, would they be affected by the state of the account as to the sinking fund and interest.

There is no hardship to the refunding bondholders in dispensing with them as necessary parties in respect to the fund in question, since the right is open to them, as in other cases of trust representation, to impeach any judgment affecting their interests for fraud or bad faith, or to obtain in advance of judgment, if seasonably advised of the fraud, such equitable relief as may be appropriate. To hold them to be necessary parties would, on the other hand, be attended with serious embarrassment to suitors asserting adverse claims, such as the plaintiff in the instant case. It is impossible to ignore the fact that in all such cases the outstanding bondholders will probably be numerous and unknown, so that a requirement to make them parties in their own proper persons would be accompanied with serious inconvenience, if it did not

operate a practical denial of relief. Cases may readily be supposed in which, on account of exemption of the property from taxation or illegality of some sort in the procedure, a taxpaying inhabitant might be entitled to injunctive or other relief. To hold that he would have to make outstanding bondholders parties, if invested with an equitable interest in the fund to arise from the tax, could have no less effect than to impede the due administration of justice. Without further extending this discussion, we conclude that the rule which dispenses with the refunding bondholders as necessary parties in their own proper persons in respect to the fund in question, treating them as constructively before the court through the city as their trustee, is the best in legal analogy and the most wholesome in effect.

This brings us to the question of parties in its relation to the third item of relief in the prayer, the right to a tax levy for payment of the demands. At the threshold of that inquiry, we are met with contention in the brief for appellant that, for reasons specified, the appellee showed no cause of action for that relief. If this be true, the question of parties as to it becomes abstract, and need not be answered. Sibley v. Hayes, 96 Texas, 84. We therefore feel authorized to examine into the points thus raised as preliminary to a decision of the ultimate matter of parties. Without pausing to inquire how far attack on appellee's bonds would be concluded by the judgments in his favor for interest thereon (see Mayor v. Lord, 9 Wall., 409, Law. ed., 704, and Brownsville v. Loague, 129 U. S., 493, Law. ed., 780), we may safely assume, in the light of a former adjudication of this court on the subject, the entire validity of the contract under which the water and light bonds were issued and sold, including the tax levy provided for as a part of its obligation. City of Austin v. Nalle, 85 Texas, 520. The contract for the bonds being valid when made, inclusive of the stipulation for tax rate to be levied for their payment, any subsequent legislation, whether consisting of a legislative enactment or municipal ordinance passed under legislative authority, impairing the obligation of the contract, either as to its validity or means of enforcement, as by withdrawing or limiting the taxing power without providing a substantial equivalent, would in so far be utterly void as violative of the contract clause of the national constitution. U. S. constitution, art. 1, sec. 10; Murray v. Charleston, 96 U. S., 436; Mobile v. Watson, 116 U. S., 289. The result would be to require the courts to pursue the same course and remedies in enforcement of the contract as they would had such invalid legislation never existed. Louisiana v. Pilsbury, 105 U. S., 278; Wolff v. New Orleans, 103 U. S., 358; Von Hoffmann v. Quincy, 4 Wall., 535; City of Galena v. Amy, 5 Wall., 705; Seibert v. Lewis, 122 U. S., 284. In no other manner could the supreme law of the land be accorded preeminence. It follows that, in the absence of some special reason to the contrary, the holders of the outstanding unrefunded water and light bonds, to which class appellee belongs, are entitled to have assessed, levied and collected (City of Houston v. Voorhies, 70 Texas, 356, and East St. Louis v. Amy, 120 U. S., 600), in disregard of subsequent inconsistent legislation and the proceedings thereunder, such proportionate part of the contractual tax of one dollar and eleven and one-half cents on the one hundred dollars' worth as

three hundred and twenty-two thousand dollars, the amount of the un-refunded water and light bonds, bears to the total issue of one million four hundred thousand dollars, or bears to the remainder after deduct-ing from the total issue such of the bonds as may have been retired out of the sinking fund provided for them. Presumably this contract-ual tax will be sufficient, under the city's taxable values, to pay the interest and provide for the requisite sinking fund, and hence no ques-tion is likely to arise as to whether, if insufficient, an implied duty would rest upon the city within its taxing power to levy an additional tax for the purpose (see United States v. New Orleans, 98 U. S., 381; City of Austin v. Nalle, 85 Texas, 541-542; and United States v. Macon Co., 99 U. S., 582).

But if all this be conceded, appellant still attacks appellee's right to relief on several grounds. Claim is made that requisite formal de-mand and refusal do not appear. Specific demand and refusal are in-dispensable whenever necessary to show default in the duty to be com-manded. In this necessity to show default is to be found the under-lying reason of the requirement. Here the facts develop conclusively that it was the city's unconditional legal duty, certain and known, to make the levy under its contractual obligation, without demand, and that, in view of its conduct, there would have been refusal to comply if a demand had been made. Under these circumstances there was no defect in the case for want of a more formal demand and refusal. The authorities on the subject have been extensively collated in a recent text (19 Am. & Eng. Ency. of Law, 2d ed., pp. 759-761), but we deem it unnecessary to review them on a matter so obvious.

It is also contended that, as to so much of the demand as was not reduced to judgment, the mandamus should not go; but, in view of parts of the claim having been put in judgment, and because the tax levy sought is a specific contractual obligation, it was proper practice in a state court to obtain judgment on the demand and a writ of man-damus for its enforcement in the same suit. Dillon's Municipal Corps., 4th ed., secs. 852, 853; City of Houston v. Emery, 76 Texas, 282.

Insistence is made that appellee is not entitled to a tax levy because as to the future, his action is premature, and, as to the past, it is too late to make a lawful levy. This claim demands careful scrutiny, since its effect, if sound, will be to destroy a solemn contractual obligation either "on the upper or nether millstone," as it would be an easy mat-ter to fight off the execution of a mandate beyond the year. The writ of mandamus, being a command based on default of duty, can not go to the future in advance of default (Commissioners v. Allegany County, 20 Md., 460; High on Extra Remedies, secs. 12, 144); but there is no reason why it may not extend to the future in redress of a past de-fault, and we hold that it may. Any other rule would often compel the courts to make an en masse levy in one year although it might be es-sential to the very life of the municipality to parcel it through years of the future. As regards its being too late to levy for past years, we observe that the present requirement of the city's charter for the levy to be made by the council "at the first regular meeting in May of each year" (Sp. Laws, 1st called sess., 1901, p. 12), was not in the charter when the bonds were sold, the provision then being merely "to levy

and collect annual taxes" (Sp. Laws, 1891, p. 105). It is familiar that, as a general rule, the mandate will go for a levy only in the manner and at the time prescribed by law (Desty's Taxation, vol. 1, p. 533), but this gives no countenance to the claim that, by neglect to perform the contractual obligation of making a levy at the time directed by law, the duty can be entirely escaped. It would be a reproach to the law to so hold. The duty in such case is a continuing one that may be exercised under judicial mandate by relation back, else there would be the anomaly in our jurisprudence of reward accorded to default, of practically a new mode for the discharge of contracts. In City of East St. Louis v. Amy, 120 U. S., 600, L. ed., 798, the requirement, as here, was of an annual levy to provide for payment of bonds, which had been neglected for several years, and it was objected that a tax could not be levied in one year sufficient in amount to make good the past defaults and pay the entire demand at once. The contention was disposed of in the opinion of Mr. Chief Justice Waite as follows: "It only remains to consider the objection that a tax can not now be levied sufficient in amount to pay the entire judgment at once. The judgment is for interest in arrear and a small amount of principal. The law required a tax to be levied annually sufficient to pay all interest as it accrued, and the principal when due. This was neglected, and consequently there is now a large accumulation of debt which ought to have been paid in installments. Thus far the inhabitants have been allowed to escape taxation at the times it ought to have been laid, and to which they were under constitutional obligations to submit. The accumulation of the debt was caused by their own neglect as members of the political community which had incurred the obligation. Such being the case, we see no reason why it was not in the power of the court to order a single levy to meet the entire judgment which was all for past due obligations. Whether such a tax would be so oppressive as to make it proper not to have it all collected at one time was a question resting in the sound discretion of the court in ordering the collection. There is nothing here to show that there ought to have been a division."

But it is insisted that, under special constitutional restraint, levy for the past years can not be made, and we are cited to sec. 5, art. 11, Texas constitution, in these words: "Cities having more than ten thousand inhabitants . . . may levy, assess and collect such taxes as may be authorized by law, but no taxes for any purpose shall ever be levied for any one year, which shall exceed two and a half percent of the taxable property of such city." The specific contention is that the percentage of tax omitted to be levied in the past years for the unrefunded bonds, if added to the percentage now being validly levied as to such bonds, will exceed the two and a half percent limit imposed. The bondholders in question took their bonds subject to the law in force at the time, including this constitutional limitation upon the taxing power of the city, and the courts can not send the writ of mandamus beyond the taxing power as prescribed by law. Huidekoper v. Macon, 9 Otto, 582, L. ed., 331; Commissioners v. King (U. S. App.), 67 Fed. Rep., 202. The question therefore recurs to the meaning of the constitutional provision. It does not, be it observed, say *when* the taxes au-

thorized shall be levied, assessed or collected, nor does it limit the percentage of taxes to be levied *in* any one year, but only "for" any one year. It is certainly a natural construction of the language to hold that it fixes a limit, not to taxes levied *in,* that is "within the bounds or limits of" any one year, but to taxes levied *for,* that is "with reference to the needs, purposes or uses of," any one year (see Cent. Dic.). A different construction would be bad in policy; it would enable a city by neglect of its own duty, to evade its contractual obligations. Courts should be loth to adopt a construction, especially of the organic law, that would encourage or open the way to wrong. In Sutherland's Statutory Const., secs. 321, 322, it is pointed out that, even where the precise intent is not plain, "the effects and consequences enter with more or less force into consideration," and reference is made to the early case of Wales v. Stetson, 2 Mass., 146, in which it is held that, in construing the provisions of a law, "they ought to receive such reasonable construction, if the words and subject-matter will admit of it, as that the existing rights of the public, or of individuals, be not infringed." There is a dearth of authority on the particular subject, the only case on the precise point to which we have been cited being that of Bowen, County Treasurer, v. West, decided by the Court of Appeals of Colorado, 50 Pac. Rep., 1085, in which a statutory provision similar in terms was construed in accord with the views we have announced. We conclude that, consistently with the constitutional provision in question, a tax provided for as part of a contractual obligation may be levied for each omitted year, so far as it is, in connection with other taxes valid as to it, within the two and one-half percent tax limit for that year, unless defeated by laches or limitation (Teat v. McGaughey, 85 Texas, 478; Sayles' Texas Civ. Stat., art. 3358), although the levy for such year may be actually made in a future year and may, when added to the valid taxes for such future year, go beyond the limit noticed. In other words, to such a levy in a future year, the constitutional limitation in question does not apply.

The other contentions made against appellees' right to a tax levy are not such as to require special notice.

Finding no good reason advanced for treating as abstract the question of parties in its relation to appellee's right to a tax levy, we proceed to consider that question. In view of what has already been said as to parties on the other branch of the case, it will not be necessary to here elaborate. No duty of any nature is required of the refunding bondholders as to the tax levy. They are without interest in the controversy, the right to the tax levy, or in the subject-matter, the taxes to be raised from the levy, or in the event or object of the suit, the application of such taxes. The judgment sought would not affect any interest of theirs. The most to be said is that in the course of the litigation, points of law may be determined that will make a precedent harmful to their interests in some other litigation; but this, of course, is insufficient as a reason for making them parties. It is perfectly plain, both on principle and under the authorities we have before cited, that the refunding bondholders were not necessary parties on this branch of the case.

In reaching the conclusions announced, under which provision will doubtless have to be made sometime for payment of the unrefunded bonds, we have been deeply sensible of the great burden of debt on the city for which, in view of its deplorable loss of the dam, it has no substantial equivalent; but we can not permit such considerations to weigh against our plain duty under the law, especially as we are entirely persuaded that, to meet the obligations without taint of repudiation, will be better for the public interest, better for the administration of justice, better for the ultimate destiny of the city. In so saying, we but tread in the steps of able jurists who have gone before. Mr. Justice Stayton, in a somewhat similar case, used this language: "The record illustrates the embarrassments under which the city labors, and its heavy weight of debt; but this was voluntarily contracted, and when called upon to enforce its payment, the courts have a simple duty to perform, from which seeming hardships can not be permitted to divert them." (Voorhies v. Houston, 70 Texas, 342.) Judge Cooley, in the same line of thought, observed: "It sometimes happens that a municipality is found to have contracted indebtedness to an extent that is felt to be extremely burdensome; and then a local sentiment may spring up in favor of refusing to raise the necessary taxes for its payment. The purpose may be either to avoid the payment altogether or to postpone it for a time, or perhaps to force a compromise with creditors and an abatement. Whatever may be the purpose, the refusal to levy taxes to meet municipal obligations according to terms is a public wrong." (Cooley's Taxation, 2d ed., p. 75.) Mr. Justice Swayne, pronouncing judgment for the United States Supreme Court, pertinently declared: "The counsel for the plaintiffs in error has called our attention, with emphasis and eloquence, to the diminished resources of the city, and the disproportionate magnitude of its debt. Much as, personally, we may regret such a state of things, we can give no weight to considerations of this character, when placed in the scale as a counterpoise to the contract, the law, the legal rights of the creditor, and our duty to enforce them." (City of Galena v. Amy, 5 Wall., 705.)

We answer the questions certified, that the refunding bondholders were not necessary parties in propriis personis, either as to the part of the case relating to the money and uncollected taxes or as to the part concerning the tax levy, and that consequently the Court of Civil Appeals erred in the particulars of inquiry.

### CONCURRING OPINION.

PADELFORD, ASSOCIATE JUSTICE.—I concur in the well considered opinion of the chief justice filed herein.

Whenever a person has the possession, title and management of property, or funds for the benefit of others, to that extent which makes him the legal owner and possessor of such property or funds, with the duty imposed to protect the same by suit if necessary; such trustee or quasi trustee can institute, and prosecute, or defend suits affecting such property or funds, without the necessity of joining those interested in the management and appropriation of such property or funds; and more

especially is this the case where the trust or quasi trust relationship is created by statute. This rule applies to guardians, executors, and administrators of decedent's estates, statutory assignees, etc.

With equal, if not with more force does this rule apply to defendants, upon whom the statutes of this state, impose the duty not only of raising by taxation, but of investing and preserving the funds in controversy for all persons interested therein. It is made the duty of the city of Austin, if necessary to preserve this fund, to institute suit, and such suit can be instituted and prosecuted to final judgment by the city alone, as was done in the case of City of Sherman v. Williams, 84 Texas, 421. It is equally the duty of the defendant, when a suit is instituted against it with reference to this fund, to see that it is legally appropriated. The law creating and imposing this trust or quasi trust relationship upon the defendant makes it a criminal offense, and a forfeiture of their offices, for a failure in the performance of this duty. Such being the relationship of the defendants to this fund, they could, and it was their duty by plea and proof, to present to the court all of the rights of all of the parties beneficially interested in this fund, without the necessity of joining such parties.

Again, where by reason of the number of the beneficiaries it is inconvenient to make them parties, it is the rule that such beneficiaries are not necessary parties. In accordance with both of the above principles or rules of procedure, the refunding bondholders were not necessary parties to this suit.

### DISSENTING OPINION.

MINOR, ASSOCIATE JUSTICE.—I concur in the opinion of the majority of the court, as to the questions decided, but not in all the reasoning of the opinion.

In my opinion there was no necessity to make the refunding bondholders actual parties to the suit; wherefore both of the questions certified should be answered in the affirmative.

As to the relief sought relating to the fund in the treasury and the levied but uncollected taxes, the refunding bondholders were constructively before the court, through virtual representation by the city as trustee of said funds for the benefit of those entitled to it.

As to the other relief sought, the levy of taxes to pay appellee's judgment, the authorities show clearly that there was no necessity to make said bondholders parties.

Upon the questions incidentally passed upon by the majority of the court, it is my opinion:

(1) That, under the pleadings of appellee and the facts found, appellee had no right to a mandamus directing tax levies for the year 1904 and subsequent years, because said writ can not be issued in advance of default.

(2) That, under the pleadings of appellee and the facts found, appellee was entitled to the writ of mandamus to compel levies of taxes for the previous years in which there were no levies for his benefit. Upon none of the grounds presented in appellants' brief can this right be denied.

### ON MOTION FOR REHEARING.

PADELFORD, ASSOCIATE JUSTICE.—Appellants, on motion for rehearing, raise the question of the disqualification of Chief Justice Ewing to sit in this case because he was counsel in the case of Nalle v. City of Austin, 85 Texas, 520. The parties to that suit not being the same, and the matters of dispute being different, we hold that Judge Ewing is not disqualified from sitting in this case. King v. Sapp, 66 Texas, 519; Cullen v. Drane, 82 Texas, 484; Blackwell v. Farmers & Merchants Natl. Bank, 76 S. W., 454; Taylor v. Williams, 26 Texas, 583; Glasscock v. Hughes, 55 Texas, 461; Slaven v. Wheeler, 58 Texas, 23, 26; Houston & Texas C. Ry. Co. v. Ryan, 44 Texas, 426, 429; Axtell's Ann. Cons. of Texas, sec. 11, pp. 148, 152, 153; 17 Am. & Eng. Ency. of Law, 2d ed., pp. 739, 740. .

The attorneys for appellants seem to misapprehend the court's attitude as to the minor questions considered in the opinion. The only questions decided by this court were the two certified by the Court of Civil Appeals, both of which were answered in the negative. The other questions discussed in the opinion of the Chief Justice were merely preliminary and collateral, and were considered solely as bearing on or illustrative of the question of necessary parties. Rosetti v. Lozano, 96 Texas, 59.

Justice Minor desires it stated that, upon further consideration, in his opinion, this court should abstain from any expression of its views upon the questions (incidentally passed upon in the original opinion) as to the appellee's right of action to compel levies of taxes for the payment of his demands; but that in all other respects he concurs in the disposition made of this motion.

The motion is hereby overruled.

Chief Justice Ewing took no part in the decision of the question raised as to his disqualification.