

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Murphy Cole
County Auditor
Liberty County
Liberty, Texas

Dear Sir:

Opinion Number O-1384
Re: Eligibility of certain
outstanding bonds for parti-
cipation in the proceeds of
the one-cent State gas tax,
under the provisions of H. B.
#688, passed by the Forty-
sixth Legislature, Regular
Session, 1939.

We have your letter in which you request our opinion
on the following questions:

"Are the outstanding bonds which were issued
for the construction of the Dayton-Cleveland
Road in Liberty County, which road was formerly
a part of the State Highway System, being desig-
nated as State Highway #146, and which designa-
tion was later lifted or abandoned, said designa-
tion being applied to another road, eligible for
participation in the proceeds of the one-cent
gas tax, which is being set aside in the Road
District Highway Fund under the provisions of
House Bill #688?"

"May Liberty County now issue bonds which
were voted in 1929 and use the proceeds thereof
for the construction of the road from Liberty
to Livingston (State Highway #146) under the
provisions of H. B. #688, and particularly under
Section 6(a), paragraph 3 thereof?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Murphy Cole, page #2

The broad general purpose of House Bill #688 is to assist the counties and defined road districts in the retirement of obligations created for the construction of roads, which function has been declared to be one resting upon the State, and because of which, there now rests upon the State both a legal and moral obligation to compensate and reimburse such counties and defined road districts for having performed such functions and to that extent the funds provided by this Act shall constitute fair, just and equitable compensation, repayment and reimbursement to said counties and defined road districts, and fully discharges the legally implied obligations of the State to so compensate, repay and reimburse such agencies of the State.

Two methods have been devised under this Act by which said obligations are to be discharged, the first being a direct participation in the one-cent gasoline tax of obligations the proceeds of which have actually been expended upon State designated highways and by indirect participation in said one-cent gasoline tax through the "Lateral Road Account", to which account is credited any excess funds remaining after all primary obligations have been discharged. This second method is designed to distribute such excess funds equitably and ratably to all of the counties and defined road districts of the State of Texas in accordance with the ratio provided.

It will be noted that the entire Act treats of the retirement of obligations already created, the proceeds of which have been expended upon State designated highways. It contemplates assisting the counties and defined road districts in retiring, paying off and discharging such obligations, and that the further construction of highways, designated as State highways, rests exclusively upon the State Highway Commission, and the counties are forbidden by the provisions of Section 3 of House Bill #688 to make any further improvements of said highways except by the acquisition of rights-of-way therefor.

The facts which give rise to your first question are, briefly, as follows:  In 1932 the Dayton-Cleveland Road in Liberty County was a part of the State Highway System and was designated as State Highway #146, and later

Honorable Murphy Cole, page #3

this designation was lifted or abandoned and said designation applied to another road. Subsequently, that is, between September 27, 1932 and prior to January 2, 1939, Liberty County constructed the Dayton-Cleveland Road with bond funds. To summarize, it must be noted that such designation was abandoned and the State Highway number which had been applied to the Dayton-Cleveland Road was applied to another road, namely, the Liberty-Livingston Road. Further, it is admitted that there was no debt existing at the time said road was abandoned as a part of the State Highway System, which, in our opinion, excludes from participation in the one-cent gas tax the obligations subsequently created for the construction of such roads, except in such proportion as the obligations may participate in any funds accruing to the county through the "Lateral Road Account".

Our construction of paragraph 3, Section 2, is that only such roads as had formerly constituted a part of the State Highway System and whose status had been lost through change, relocation or abandonment, that had been constructed with bond funds and the obligations issued to secure such funds were outstanding at the time the road was a part of the System, and which bonds or obligations had not been discharged or retired at the time such road lost its designation either through change, relocation or abandonment, can participate as an "eligible issue" under the terms and provisions of House Bill #688. We cannot conceive that the Legislature intended to permit bonds, the proceeds of which are to be expended on a road formerly constituting a part of the State Highway System, to participate in the primary benefits of the one-cent gasoline tax if such bonds are issued subsequent to the abandonment of such road as a part of the State Highway System. Further, there being no evident intention by the Highway Commission of redesignating such road as a part of the Highway System, we think the exception provided in subsection (a) of Section 6, paragraph 2, inapplicable to this issue of bonds.

Therefore, we conclude that your first question must be answered in the negative.

The facts underlying your second question are, briefly, that in 1929 bonds were voted for the construction of a

road then known as Liberty-Livingston Road, and that in 1932 said road was designated as State Highway #146, but, to date, the bonds have not been issued or the road constructed.

In order that such bonds may now be issued and be eligible for participation in the one-cent gasoline tax as provided in House Bill #688, said facts must come within the apparent exception provided in paragraph 3, subsection (a), Section 6, of said bill. This exception reads, in part:

"In addition to and regardless of the other provisions of this Act, all bonds voted by a county prior to January 2, 1939, insofar as amounts of same were or may be issued and the proceeds actually expended in the construction of roads which are a part of the designated System of State highways, shall be eligible in the distribution of the moneys coming into said County and Road District Highway Fund, the same as provided for other bonds under this Act, and as of the date of the designation of said roads as a part of the State System * * *".

When a statute expresses a general intent or purpose and afterwards an inconsistent particular intent, the latter is to be regarded as an exception to the former and both are permitted to stand. Also, where one section of an Act prescribes a general rule which, without qualification, would embrace an entire class of subjects and another prescribes a different rule for individual subjects of the same class, the latter will be construed as an exception to the general rule. See 39 Texas Jurisprudence; Section 101; also Walker vs. Myer, 266 S. W. 499, Cameron vs. City of Waco, 8 S. W. (2d) 249. Further, it has been held that a general provision of a statute must yield to a special one so far as is necessary to give effect to the particular subject of the special provision. See City of Austin vs. Cahill, 88 S. W. 542, rehearing denied, 89 S. W. 552, also Callaghan vs. McGown, 90 S.W. 319, error refused. In the case of Stevens vs. State, 159 S. W. 505, the Court of Criminal Appeals held that where

two provisions of the same law are in conflict, the last one controls. The weight of authority seems to be to the effect that in case of conflict between the general and special provisions of a statute, the special one shall prevail. And even when a statute expresses a general intention and likewise a particular intention incompatible with it, the particular intention may be deemed an exception to the general one. See Helem vs. Wells Fargo & Company Express, 177 S. W. 134.

Section 3 of House Bill #688, states, in part:

"All further improvements of said State Highway System shall be made under the exclusive and direct control of the State Highway Department, and with appropriations made by the Legislature out of the State Highway Fund. No further improvement of said system shall be made with the aid of or with any money furnished by the counties except where the acquisition of rights-of-way which may be furnished by the counties, their subdivisions, or defined road districts."

It is obvious that paragraph 3 of subsection (a) of Section 6 is in conflict with the provision above quoted, but by the very language of this paragraph, the Legislature has attempted to make this provision an exception, such language being — "In addition to and regardless of other provisions of this Act * * *", which, in our opinion, brings this within the purview of the holding in the case of Holford vs. Patterson, 240 S. W. 341, which was affirmed in 257 S. W. 213, wherein the court stated that "when a statute first expresses a general intent and afterwards an inconsistent particular intent, the latter will be taken as an exception to the former and both will stand."

In view of the authorities quoted above, which, when read in connection with the language employed in the Act, we reach the conclusion that your second question must be answered in the affirmative, that is, that such bonds when issued shall be eligible for participation in the primary

benefits of the one-cent gasoline tax as provided in House Bill #688.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Clarence E. Crowe*

Clarence E. Crowe
Assistant

CEC-s

APPROVED NOV 1, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

